UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FILED

2019 MAY 23  PM 2: 44

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS
FLORIDA

In Re:

Joseph D. Gilberti, Jr., P.E.,                    **Case No. 9:19-bk-02577-FMD**
                                                   Chapter 13

                    Debtors,
_____/

**DEBTORS ANSWER TO SHOW CAUSE AND REQUEST FOR JUDGE DELANO
TO RECONSIDER RECUSING HERSELF DUE TO RACKETEERING CASES
INVOLVING HER COURTROOM AND THE ENTERPRISE**

　　　　Comes now, Joseph Gilberti, Jr., P.E. (the "Debtor") hereby submits answers to Judge

Delano's order to show cause on Chapter 13 filing and for Judge Delano to Recuse herself from

all proceedings.

**Cause of Action why case should not be dismissed and Judge should recuse herself**

　　　　1.　　　　A Civil Racketeering lawsuit regarding Terrorism and Eugenics on Waters Supply

against the Trustee and a huge Enterprise of Leader, Judges, Lawyers and agencies was recently

filed and docketed (Case 19-cv-00738-KBJ) in appeals within the United States Court of

Appeals Federal District and now in US Middle District Court filed on Governor Ron Desantis

(Case 19-cv-00282) and similar parties that may be coming into help dissect the past

Compromise that discharged land with an invalid Mortgage still pending in Sarasota on

Daughtrey and other cases for lien on lands illegally discharged by Trustee to hide a US

Drinking water resource.

　　　　2.　　　　The Trustee and 72 Partners have no real property legally as this Foreclosure may

be reversed any day in Case 2011 CA 004209 NC, pursuant to a Motion to set aside the

Judgment that is pending in Title. See attached in **Exhibit I.**

　　　　3.　　　　Due to the US Terrorism attacks timed with this courts actions over the past years,

the Debtor wishes plead the 5th Amendment until future notice and legal council is obtained due to the Nature of actions Judge Delano's courtroom and the Trustee have taken to hide this Medicine changing resource, attack the Debtor with US Marshals claiming Judge Delano wants me to not enter the building on May 6, 2018 due to issues she has with Debtor.

4.    Due to the US Terrorism attacks timed with this courts actions over the past years and upcoming discovery with multiple Federal and State Agencies debtor ask the court to Abate all issues on this case until discovery is completed, all parties in both Racketeering cases filed have a chance to review this courts actions, Hillsborough County State  attorney actions with falsified police reports by Trustee's attorney Lara Hernandez, actions by US Marshals stating Judge Delano doesn't want me in the Federal building on May 6, 2019 when trying to file a civil complaint to others, forcing him out of the building and taking his drivers license for over one hour without him knowing.

5.    Sarasota Judge Ruhl heard issues stated above on May 6, 2019 in case 2015 CA 006544 NC Gilberti vs 72 Partners on a lien foreclosure to abate actions that was tabled until appeal filings and other cases are shown for RICO are filed due to Terrorism acts timed with an enterprise involving Tampa Judges and the Department of Justice hiding a critical US Drinking Water Resource in the Compromise by the Trustee and with 72 partners.

6.    The Daughtrey's deeded Section 1 & 2 over 90days before filing a Chapter 7 Bankruptcy petition for a trial that was never notified due to this Enterprise as described in the Racketeering cases and will be proven in Discovery that involves Judges from District 13, District 12 and US Middle District Courts.

7.    Another Racketeering filing is going into the Southern District of Florida which this case is being tied to and others associated with it.

8.    Debtor brought his client Robert Flint with full payment to 72 Partners that was

denied and lands were sold during a pending Foreclosure due to an invalid title.

9.  Attached is a quiet title case 2016 CA 004209 NC in Sarasota County from 72 Partners vs Gilberti which 72 Partners backed out the day Kenny Harrison of 72 Partners was exposed who sits on Babcock Ranch boards for Water supply, Peace River Boards at Southwest Florida Water management district and brags to locals and witnesses that he is taking this land to sell it to Mosaic Phosphate next door who is known for destroying aquifers.

10.  Debtor was attacked during the proceeding by US Marshals, Greenberg Traurig Dave Weinstein, who is chief council for Mosaic phosphate with mining compacts timed with this case in a foreclosure case in Sarasota on July 11, 2011 Case 2011 CA 004209 NC. This land has the two essentials for a Fertilizer plant and Sarasota never signed the 2008, $57 million dollar mining compact.

11.  Judge Delano and Trustee skipped all evidentiary hearings and issues a compromise that discharged lands in a pending foreclosure for title as the mortgage was a TILA and had a bad survey.  See Racketeering cases.

12.  Debtor needs to finish discovery in Racketeering cases with agencies that will come to his side once the Resource is recognized by leaders which is being hidden by this court and its Trustee, Judge Delano and US Marshals to potentially condemn millions of Americans at the tap, jobs, new medicine and the knowledge to find more across America and the World from its geological indicators.

13.  Trustee Jon Waage and attorney Mike Cecil both know of the Terrorism and US Resource now and are subject to the Racketeering case.  It is the civil duty of all lawyers and citizens to acknowledge the US Resource that takes hours to verify and the US Terrorism acts, timed with bond hikes to kidnap Debtor timed with Daughtrey and Debtor cases against 72 Partners who is part of the Enterprise with many attorney politicians, Judges and Israel-Saudi

Arabia owned Mosaic Phosphate in the Tampa to Fort Myers Region destroying drinking water aquifers with the Enterprise.

14.     No notification of the hearings to debtor or Daughtrey's was provided by Ryan Snyder or the Trustee for US Middle District in the past years.  Especially the legal description fixes that still show a boundary that doesn't close or have chain in title this court ignored via skipping all evidentiary hearings to railroad a compromise and hide the US Resource from millions of people.

15.     Trustee and Judge Delano should have protected Debtors client Cecil Daughtrey and investigated the Mortgages, TILA issues and dismissed all debts from 72 Partners and BSFL Holdings who targeted this land for the secret underground Resource.

16.     See **Exhibit I** attached showing this court, Trustee and Ryan Snyder entertained an falsified title policy by Ryan Snyder for Debtors land then withdrew it in open court.  Also see defenses and case law by Debtors lawyers on trustee and deeds regarding timing of Daughtrey Chapter 7 petition.

17.     72 Partners may loose all position and foreclosure judgment as Racketeering case opens showing FRAUD on the Courts, malpractice by lawyers and Judges hiding the US Resource and issues raised on the civil Racketeering cases that may become criminal as President Trump, Ron Desantis, Federal Reserve, agencies and Congress are apprised of the actions taken by this court and it personal against the tax payers.

18.     Judge Delano should be removed from this case due to US Marshals stating that she has issues with the Debtor over the past years, for what debtor can not understand other than she may be part of the RICO Enterprise that is centralized in Tampa (again on May 6, 2019 where debtor was surrounded inside the Fort Myers Federal Building for doing nothing and kicked out of the building for trying to file a lawsuit to others and get help from Governor Ron

4

Desantis).

19.        Debtor has an online national video of a Cancer friend, Glenn Howard who died since of Cancer, who called Judge Delano from Lee Health Park 3-4 days before the Trustee signed of the compromise with 72 Partners on October 31, 2014, when the foreclosure is still pending.  Glenn Howard who is now dead from Chemo and not getting this Water, called Judge Delano in debtor's presence from the Lee Memorial Health Park Hospital who was doing fine with the secret Water, wanted to get more, and was denied access by Judge Delano and the railroaded Trustee Compromise, and died shortly after due an Enterprise hiding this US Resource and attacking America with issues tied to the **Smith Mundt Act 2012 Modification** or even worse, real terrorism.    See video link of Glenn Howard contacting Judge Delano from Lee Health Park for Water in 2014 during Compromise.  https://youtu.be/A9o8vuTESyQ

20.        Another Judge should review all cases, the RICO case and Judge Delano's actions with the Trustee, the US Marshall attacks on Debtor, his family on Boston Bomb day and shortly after at his Valrico home when the Texas Fertilizer plant explosion (Really a Missile hit by Monsanto and Bush Family) with witnesses and neighbors who testified.  US Marshals attacked debtors wife, Tampa Judge Dominquez raises Debtors whistleblowing (cyberstalking?) bond from Greenberg Traurig (Dave Weinstein and Vin Marchetti) from $500 to $300,000 for a *misdemeanor with no contact in years but simply finding out the resource is the healthiest on Earth and it shows America how to find many more in days from the geological indicators.*  See Mosaic Phosphate Reports in August 2012 regarding KT Event and Gilbert KT Hypothesis.  The moment Debtor realized what was under his land, the US Middle District courts, District 12 & 13 with the Enterprise and a massive gang of lawyer and attorney politicians, such as Rick Scott, Obama and *Blue Gold Bush Family attacked!*

21.        Judge and Lawyer are NOT capable of evaluating this unique water mixture that

shows the highest Calcium and Magnesium on Earth in Alkaline spring water. Judge Delano and the Trustee failed to hire any Engineers or licensed professionals to test the water quality or its capacity next to a 4-County regional water supply system called Peace River Manasota Water supply authority (serving Sarasota-Manatee-Desoto-Charlotte Counties). This underground river Judge Delano and the Trustee labeled as a well and carved 160acres destroyed the project by the debtor.

22.    Judge Delano and the Trustee ignored the fact Well Fargo stole thousands of dollars of Daughtrey and debtors monies that was submitted in the 341 meetings and by Daughtrey in Chapter 7. A National Bank stole over $57,000.00 with Scott Freyre and was ignored by this court as well as the timed Terrorism attacks disclosed to this court and US Marshals for years.

23.    Many citizens have come into Sarasota commissions, Desoto commissions and more who are preparing Class Actions regarding said issues.

24.    Paul Decailly was fired by Daughtrey prior to the appeal case, but never left the case and hide the Resource and exists, while working with the Trustee, Judge Delano to keep the compromise issues of not discovery, or exists for the Chapter 11 hidden from upper courts. Here again the lawyers in this region keep jumping to the other side, hiding the US Resource and attacking both the debtor, the US Pipeline project to serve spring water with lower water bills to the area, and Daughtrey.

25.    Debtor, Daughtreys, Robert Flint are working on this project to supply Antioxidant Spring water to millions of Taps with just one pipe that is in permit, this court ignored that ties to a 4-6 County water supply infrastructure using Phosphate Radioactive rivers with RED TIDE and Arsenic, an old Gypsum stack with the Enterprise tied to Judge Delano, the Trustee, District 12, 13, 20 and 17 Judges, EPA, FEMA and Leaders. This case and others needs

6

to be collectively exposed to all US Citizens as these secret underground rivers (NOT JUST a Well, as that is access to it) are being hidden by the US Middle District and a group of CRAZY Judges that seem to care less for our Children, Homes and Country or they would NOT have skipped the Evidentiary hearing and Gilberti wouldn't be under attack by US Marshals, Cops, Rick Scott and the Enterprise of FOOLS that care about money more than Endless Clean unique spring water to the tap of our Homes, businesses and Schools.  In a Cancer rising World.

**WHEREFORE,** the Debtor request all issues on this case be abated until all parties are summons and aware of the hidden underground river this court simply called "A Well" in two filed Racketeering cases, one in appeal to US Courts of Appeals, Federal District and now US Middle District and soon Southern District on Parkland Shooting timed with FDEP Marjory Stoneman Douglas shooting with Jon Iglehart the FDEP Director as a witness.   This court and the Enterprise better hope those timed Boston Bomb, Pulse Bar and Parkland surrounding Engineer Gilberti water supply submittals are FAKE with the Smith Mundt Act, because if they are real, and we are suing to depose Broward Kids, School boards and Cops to find out, then we have a much worse situation.   Anyone can see these fake AR-15 emails assisted by Lara Hernandez, District 13 Tampa where this US Middle District Court and 72 Partners Lee Pallardy (who works with Greenberg Traurig, Swfwmd, US Middle District and Tampa District 13 on his record resume) attacked Gilberti, his clients and this critical US Resource to help fill Cancer centers and sell medicine with an enterprise.

Debtor request Judge Delano RECUSE HERSELF IMMEDIATELY FROM HIDING A US RESOURCE AND HARBORING TERRORISM ACTS WITH TRUSTEE and US MARSHALS FOR 6YRS, AND NOW JON WAAGE AND THEIR LAWYERS and send all files to Governor Ron Desantis who is on the US Middle District lawsuit, which the debtor sees him coming to his help and THE PEOPLES help on this hidden US Resource the Trustee, Lara

Hernandez, this court attacked while Hillsborough County and Lee County attacked the debtor timed with terrorism acts to hike his bond and keep him from maintaining a living, from his family, slowing down the project and attacking his clients Flint and Daughtrey.

## **CERTIFICATE OF SERVICE**

**I CERTIFY** that, on May 22, 2019, I served personally and/or mailed via U.S. First Class Mail filed this document with the Clerk of the Court at 801 North, Florida Ave, Suite 555, Tampa, Florida 33602 which will send a notice of electronic filing to Cecil Daughtrey Jr. and Patricia A. Daughtrey, 9438 Daughtrey Road, Sidell, FL 34266; Luis E. Rivera, II, Trustee, 1404 Dean Street, Suite 300, Fort Myers, FL 33901; and Office of United States Trustee, 501 E. Polk Street, Suite 1200, Tampa, FL 33602.

/s/ *Joe Gilberti*
Joseph D. Gilberti, Jr., P.E.
Debtor
385 Donora Blvd
Ft Myers Beach, FL 33931
813-470-6000
Gilberti.water.company.fla@gmail.com

8

# EXHIBIT I

## IN THE CIRCUIT COURT OF THE 12TH JUDICIAL CIRCUIT
## IN AND FOR SARASOTA COUNTY, FLORIDA

BSLF Holdings, LLC
and 72 Partners, LLC

      Plaintiff                            Case No.:   **2011 CA 004209 NC**

v.

CECIL DAUGHTREY JR., and PATRICIA A.
DAUGHTREY, individually and as husband
and wife, and RICHARD O. BECKER, an individual,

      Defendants

-and-

JOSEPH GILBERTI, JR., an individual
      Intervening Defendant.

_____/

### MOTION TO INTERVENE AND TO SET ASIDE FINAL JUDGMENT AND COUNTERCLAIMS

      COMES NOW, the Intervening Defendants, JOSEPH GILBERTI, files this Motion to Intervene pursuant to Florida Rule of Civil Procedure 1.230 and to Set Aside the Final Judgment upon grounds of invalidity pursuant to Florida Rule of Civil Procedure 1.540, and in support thereof, states the following:

      1.      Joseph Gilberti, Jr. (hereinafter "Gilberti"), is a natural person and resident of the State of Florida, conducting business in and around Sarasota County, Florida.

      2.      On or about the 25th day of May, 2011, the BSLF (then the Plaintiff in this action) filed suit in the above captioned action, seeking foreclosure upon a Mortgage held against Cecil and Patricia Daughtreys' real property (hereinafter referred to as the "Daughtrey's Real Property").

      3.      This Mortgage and case never had a Trial with Defendants presence as not

1

notification was provided as part of a Racketeering Enterprise to hide a secret underground Drinking Water Resource.

4.    Daughtrey's hired Gilberti to produce Civil Engineering and consulting work on the property which contained a lien provided to Plaintiff and was recorded in Sarasota County records.

5.    The Trial notification was hidden by Sarasota County clerks of court through a Racketeering Enterprise case filed in Tampa Middle District Courts Case 2:19-cv-00282 which will show a April 1, 2013 E-file mandate where software will change in the Clerk of Courts was done in Sarasota timed with Daughtreys fired attorney Mr. Owen setting Trial after he withdrew on or about August 28 to September 3, 2013, knowing Daughtrey's did not have council, while Chief Judge Charles Williams was assigned to this case for a small period of six months.  Why would Daughtrey's lawyer, Mr. Owen set trial after being fired by Daughtrey a month earlier; and why would a Chief Judge set the trial then assign a retired Judge to the case for the Trial, and allow such actions, during an Obama 13-day HP Glitch Federal Shutdown and US Holiday?

6.    The Defendants checked dockets this entire month and no trial showed up on computers at the clerk until after the trial was over due to an invalid mortgage from an Enterprise tied to both 72 partners and BSFL Holdings, the Plaintiffs to secure this resource knowing the Mortgage was invalid and their mistakes were being exposed on line by Gilberti.

7.    Daughtrey's never had a Job and were never supposed to receive a loan from BSFL Holdings but were extorted and taken advantage of by Plaintiff and the Enterprise to secure a secret underground Drinking water resource and damage the Gilberti's Water supply plans, and alignments.  Once BSLF Holding realized they had a bad legal when Greenberg Traurig Dave Weinstein was representing Daughtrey (also chief council at the time for Mosaic Phosphate in conflict on the Sierra vs Fort Meade Case in 11th District Court of appeals on July 11, 2011), who

2

PDF Created with deskPDF PDF Creator X - Trial :: http://www.docudesk.com

then took the note to the enterprise for assignment to hopefully make a settlement in a Mining Compact. This property has is in the Mosaic Phosphate District, has a deep well and a Phosphate mining permit, and Sarasota County is the only County in West Florida region that denied their $57Million dollar offer at Commission on or about 2008.

8.      The real property to which the Mortgage attached was described as follows:

**All that part of Section 1, Township 38 South, Range 22 East, lying North of State Road 72, All Section 2, Township 38 South, Range 22 East, LESS right of way for State Road 72, All Section 11, Township 38 South, Range 22 East, The North 1/2 and North 1/4 of the South 1/2 of Section 14, Township 38South, Range 22 East, All of Section 15, Township 38 South, Range 22 East, LESS railroad right of way, The West 1/2 of Section 16, Township 38 South, Range 22 East, LESS a parcel of land in Sections 2, 11, 14 and 15, lying within the following described parcel: Begin at the NW corner of said Section 11; thence South 01 degrees 59'53" West, 5340.96 feet to the SW corner of said Section 11; thence North 88 degrees 22'46" West, 5377.94 feet to the NW corner of said Section 15; thence South 02 degrees 00'10" West, 1320 feet; thence South 88 degrees 22'46" East, 6698.08 feet: thence North 01 degrees 59'53 East, 7240.95 feet to the South Right-of-Way of State Road 72; thence along said South Right-of-Way of State Road 72, Southwesterly along a curve to the right 400.45 feet to the West line of said Section 2; thence South 02 degrees 14'29" West, 18.87 feet to the point of Beginning, LESS Oil and Mineral Right, all lying and being in Sarasota County, Florida.**

9.      However, the legal description on Mortgage is inaccurate, and does not reflect the legal descriptions contained on the Mortgagor's deeds, and in fact, includes land that was deeded to Mr. Robert J. Flint in 2003. Attached hereto as **Exhibit "A"** is the Warranty Deed from Mr. Daughtrey to Mr. Flint, recorded on March 6th, 2009.

10.     The net effect of the Mortgage's inaccuracy renders the mortgage itself void.

11.     Much like the Mortgage, the Lis Pendens filed in this case also inaccurately described the property, and thus was ineffective as well.

12.     A Final Judgment was entered on October 14th, 2013 upon the Plaintiff's Complaint, however no certificate of title has ever been issued, nor has the property been sold. Accordingly, additional judicial efforts remain before the case is fully concluded.

13.     On July 26th, 2013, the Daughtreys executed a Warranty Deed in favor of Joseph D. Gilberti, Jr., conveying land to which the Plaintiff claims a right. This deed was recorded on

3

PDF Created with deskPDF PDF Creator X - Trial :: http://www.docudesk.com

June 10th, 2014. A copy of said deed is attached hereto as **Exhibit "B"**.

14.     Since the time Mr. Gilberti recorded the deed, this litigation has been stayed pending the bankruptcy action brought by the Daughtreys.

15.     However, at this time, the Plaintiff has apparently been given permission to conclude the above captioned litigation, and this Motion has been brought forth with the lift of the stay. As such, this matter has been timely brought before the Court.

### MOTION TO INTERVENE PURSUANT TO RULE 1.230

16.     Mr. Gilberti, as a person holding a present interest in the land, has a right to intervene in this pending litigation so as to protect his interest and his rights with respect to the property he is entitled to. See generally *U.S. Bank Nat. Ass'n v. Quadomain Condominum Ass'n, Inc.*, 103 So.3d 977, 979 (Fla. 4th DCA 2012) (holding that "the only way to enforce a property interest that is unrecorded at the time the *lis pendens* is recorded is by timely intervening in the suit creating the *lis pendens.*" *Id*).

17.     This Motion to Intervene, though coming after the final judgment, is nevertheless required for the ends of justice given the inaccuracy of the Mortgage, and the potential Certificate of Title in this action, which would prejudice the property interests contained in Mr. Gilberti's deed and in Mr. Flint's deed. Such late joinder is permissible where there is a demonstration of an interest in the subject real property that the ends of justice require the intervention to be granted. See *Wags Transp. System, Inc. v. City of Miami Beach*, 88 So.2d 751 (Fla. 1956).

18.     Accordingly, Mr. Gilberti should be permitted to intervene in this action for purposes of setting aside the Final Judgment, and participating thereafter as his interests may provide.

### MOTION TO SET ASIDE FINAL JUDGMENT PURSUANT TO RULE 1.540

19.     As noted above, the legal description contained in the Mortgage, and subsequently included in paragraph 2 of the final judgment, explicitly conflicts with the property interests of

4

PDF Created with deskPDF PDF Creator X - Trial :: http://www.docudesk.com

Mr. Robert J. Flint, and of Mr. Joseph Gilberti, and exceeds the subject matter jurisdiction of the Court in this action, which is limited to property properly liened by the Plaintiff.

20.     Furthermore, the same flawed legal description was contained in the Lis Pendens, which serves to nullify the Lis Pendens, in turn denying Mr. Gilberti notice of the judicial proceedings.

21.     Accordingly, the Final Judgment is fatally flawed and void as it awards property not at issue and not in the interest of the Plaintiff (or the original named Defendants).

22.     **Where a final judgment of foreclosure has been entered containing a mistaken legal description, which is also contained on the underlying mortgage, the Final Judgment of Foreclosure MUST be set aside and the foreclosure process must begin anew.** *Lucas v. Barnett Bank of Lee County*, 705 So.2d 115, 116 (Fla. 2nd DCA 1998) citing *Fisher v. Villamil*, 62 Fla. 472, 56 So. 559 (Fla. 1911).

23.     See Affidavit by Professional Surveyor Sam Esber, illegal Ryan Snyder title policies with US Trustee, and filed counterclaims by Daughtrey's attorneys within this case dockets as described hereto as **Exhibit "C"** which describe the Truth & Lending Act issues for this foreclosure case that never received a trial.

24.     72 Partners and the Enterprise illegally subdued Gilberti with Tampa District 13, timed with bond hikes and US Terrorism acts, US Trustee Compromises selling property during a pending foreclosure, due to an invalid mortgage, in an effort to secure and hide this World underground and Unique Resource from millions of American People for a high powered Corporation in west Florida destroying aquifers of clean Drinking Water and pollution rivers used for drinking water named, Israel-Saudi Arabian owned Mosaic Phosphate.

        **WHEREFORE**, the Intervening Defendant, JOSEPH GILBERTI, JR., respectfully request this honorable Court GRANT this Motion to Intervene pursuant to Florida Rule of Civil

5

PDF Created with deskPDF PDF Creator X - Trial :: http://www.docudesk.com

Procedure 1.230 and to Set Aside the Final Judgment upon grounds of invalidity pursuant to

Florida Rule of Civil Procedure 1.540, and enter an Order permitting Mr. Gilberti to intervene in

the pending litigation, and an Order SETTING ASIDE the Uniform Final Judgment of Mortgage

Foreclosure, so as to permit the process to begin anew; or dismiss the entire mortgage and

Judgments due to Truth and Lending Acts, issues tied to Racketeering from Plaintiffs predatory

loans, as Daughtreys never had a job or way to pay the loan, and a hidden Trial without

notification with an Racketeering Enterprise timed with Sarasota Clerk E-file meta data transfer

software games conveniently timed during a Obama Federal Shutdown and a National Holiday,

where Sarasota Trial took place without Defendants knowing; and for such further relief as this

Court deems fair and equitable under the premises.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy was filed at the Sarasota Clerk E-file

systems of the foregoing which was furnished via email this 10th day of May 2019 to:

Ryan L. Snyder, Esq.
FBN 0010849
**Snyder Law Group, P.A.**
*Co-Council for 72 Partners*
2025 Lakewood Ranch Blvd, Suite 102
Bradenton, FL 34211
941-747-3456
941-747-6789 Facsimile
Ryan@SnyderLawGroup.com
Lexy@SnyderLawGroup.com

Eduardo F. Morrell, Esq.
FBN 0773281
**Morrell, P.A.**
*Co-Council for 72 Partners*
PO Box 2786
Lakeland, Florida 33806-2786
863-802-8037
863-802-5312 Facsimile
EMorrell@MorrellPA.com

/s/ *Joe Gilberti*
Joseph D. Gilberti PE
Plaintiff
385 Donora Blvd
Ft Myers Beach, FL 33931
813-470-6000
Gilberti.water.company.fla@gmail.com

6

# EXHIBIT "A"

PDF Created with deskPDF PDF Creator X - Trial : http://www.docudesk.com

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2003042682 2 PGS
2003 MAR 06 11:14 AM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY,FLORIDA
FMILLER Receipt#286679
Doc Stamp-Deed:    0.70

**THIS INSTRUMENT PREPARED BY:**
Fletcher Brown
**BROWN & WALDRON**
124 North Brevard Avenue
Arcadia, FL 34266
(863) 494-4323

**PARCEL I.D. NUMBERS:**
1011-00-1000
1029-00-1000
1035-00-1000
1037-00-1000

## WARRANTY DEED

THIS INDENTURE, made this _4th_ day of _March_, 2003, between CECIL DAUGHTREY, JR., and PATRICIA A. DAUGHTREY, his wife, whose mailing address is 9438 Daughtrey Road, Sidell, Florida 34266, party of the first part, and ROBERT J. FLINT, a/k/a, JERRY FLINT, whose Social Security Number is:  and whose mailing address is 2634 N.W. Flint Road, Arcadia, Florida 34266, party of the second part,

### WITNESSETH:

That the said party of the first part, for and in consideration of the sum of $10.00, to him in hand paid by the said parties of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said parties of the second part, their heirs and assigns forever, the following described land, located in SARASOTA COUNTY, FLORIDA, to-wit:

Description of a parcel of land lying in Sections 2, 11, 14 and 15, Township 38 South, Range 22 East, Sarasota County, Florida described as follows:

Begin at the NW corner of said Section 11 for Point of Beginning; thence S 01°59'53" W along West line of said Section 11, 5340.956 feet to SW corner of said Section 11; thence N 88°22'46" W along North line of Section 15, 5377.94 feet to NW corner of said Section 15; thence S 02°00'10" W along West line of said Section 15, 1320.00 feet; thence S 88°22'46" E, 6698.06 feet to a point in Section 14; thence N 01°59'53" E, 7240.95 feet to a point on the South Right-of-Way of State Road No. 72; thence S 66°13'13" W along said South Right-of-Way, 1042.16 feet to P.C. of a curve having an arc distance of 400.45 feet, a radius 1306.62 feet and a delta angle of 17°33'35"; thence Southwesterly along arc of said curve on said South Right-of-Way, 400.45 feet to a point on the West line of Section 2; thence S 02°14'29" W along said West line, 18.87 feet to Point of Beginning.    Subject to reservations, restrictions and easements of record.

This deed is exchanged without consideration inasmuch as the properties have been determined to be of equal value by the exchange agreement, dated January 15, 2002. (A copy of which is attached)

PDF Created with deskPDF PDF Creator X - Trial : http://www.docudesk.com

INSTRUMENT # 200304256.2
2 PGS

### THE ABOVE-DESCRIBED REAL PROPERTY IS NOT THE HOMESTEAD OF THE GRANTOR

**TOGETHER** with all the tenements, hereditaments, and appurtenances thereto belonging or in anywise appertaining.

And the said party of the first part does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever.

**IN WITNESS WHEREOF,** the said first party has signed and sealed these presents the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
FLETCHER BROWN, Witness
(Print name)

_____
LINDA L. QUEZADA, Witness
(Print name)

_____
CECIL DAUGHTREY, JR.

_____
Witness
FLETCHER BROWN, Witness
(Print name)

_____
Witness
LINDA L. QUEZADA, Witness
(Print name)

_____
PATRICIA A. DAUGHTREY

STATE OF FLORIDA:
COUNTY OF DESOTO:

The foregoing instrument was acknowledged before me this 4TH day of March, 2003, by CECIL DAUGHTREY, JR. who is (personally known to me) or who produced _____Known_____ type of identification and who did/did not take an oath.

_____
Notary Public, State of Florida
LINDA L. QUEZADA
Print Notary Name

Linda L. Quezada
MY COMMISSION # DD14526 EXPIRES
November 30, 2006
BONDED THRU TROY FAIN INSURANCE, INC.

STATE OF FLORIDA:
COUNTY OF DESOTO:

The foregoing instrument was acknowledged before me this 5TH day of March, 2003, by PATRICIA A. DAUGHTREY, who is (personally known to me) or who produced _____Known_____ type of identification and who did/did not take an oath.

Linda L. Quezada
MY COMMISSION # DD14526 EXPIRES
November 30, 2006
BONDED THRU TROY FAIN INSURANCE, INC.

_____
Notary Public, State of Florida
LINDA L. QUEZADA
Print Notary Name

# EXHIBIT "B"

PDF Created with deskPDF PDF Creator X - Trial :: http://www.docudesk.com



**THIS INSTRUMENT PREPARED BY**

Joseph D. Gilberti, Jr., President

LandTech Design Group, Inc.

~~3148 Beaver Pond Trail~~ 395 Dewcra Ave

~~Valrico, Florida 33596~~ Ft Myers, FL 33931

~~(813) 470-6000~~ P13-482-8512

**Property Appraisers Tax Folio Numbers:**

**1009-00-1000 and 1011-00-1010**



RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2014067954  3 PG(S)
June 10,  2014  12:11:17 PM
KAREN E RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FL

Doc Stamp-Deed: $910.00

**WARRANTY DEED**

    **THIS INDENTURE**, made this 26th day of July, A.D. 2013 between **Cecil Daughtrey, Jr.** joined by his spouse **Patricia Ann Daughtrey**, whose address is 9438 Daughtrey Road, Sidell, Florida 34266, grantor*, and **Joseph D. Gilberti, Jr.** whose address is 3148 Beaver Pond Trail, Valrico, Florida 33596, grantee*

*"Grantor" and "Grantee" are used for singular and plural, as context requires.

    **WITNESSETH** that said grantor, for the consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations to said grantor I hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Sarasota County, Florida, to wit:

> *All that part of Section 1 lying North of State Road No. 72 and all that part of the East 1675.00 feet of Section 2 lying North of State Road No. 72 and the North 2068.04 feet of the West 924.27 feet of the East 2,599.27 feet of said Section 2, all in Township 38 South, Range 22 East, Sarasota County, Florida.*

> *Subject to reservations, restrictions and easements of record (360 +/- Acres)*

**TOGETHER WITH:** All tenements, hereditaments, and appurtenances thereto belonging or in anywise appertaining, with all oil, gas and mineral rights held by grantor and by Predecessors in title.

**THE ABOVE-DESCRIBED REAL PROPERTY IS NOT THE HOMESTEAD OF THE GRANTOR**

    And the said grantor of the first part does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever.

PDF Created with deskPDF PDF Creator X - Trial : http://www.docudesk.com

**IN WITNESS WHEREOF**, grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

_Carl Musselwhite_
Signature of first witness to both

_Cecil E Daughtrey Jr._
Cecil Daughtrey, Jr.

_CARL Musselwhite_
Printed name of first witness

_Jonathan Forman_
Signature of second witness to both

_Patricia A. Daughtrey_
Patricia Ann Daughtrey

_Jonathan Forman_
Printed name of second witness

**STATE OF FLORIDA**

**COUNTY OF DESOTO**

    The foregoing instrument was acknowledged before me this 26ᵗʰ day of July, 2013, by **Cecil Daughtrey, Jr.** joined by his spouse **Patricia Ann Daughtrey**, husband and wife, who are each [✓] personally known to me or who have each produced [ ] a Florida driver's license as identification, and who did/did not take an oath.

Sign _Bobbi Jo Forman_
           Notary Public, State of Florida

_Bobbi Jo Forman_
          **Print Notary Name**
          My Commission Expires: 9/27/13

          _DD 907737_
          **Commission Number**

Notary Public State of Florida
Bobbi Jo Forman
My Commission DD907737
Expires 09/27/13



## SKETCH AND DESCRIPTION

THAT PART OF SECTION 1, TOWNSHIP 38 SOUTH, RANGE 22 EAST, LYING NORTH OF STATE ROAD 72, CONTAINING 208.5 ACRES,

ALSO THAT PART OF THE EAST 1675 FEET OF SECTION 2, TOWNSHIP 38 SOUTH, RANGE 22 EAST, LYING NORTH OF STATE ROAD 72, AND THE NORTH 2688.04 FEET OF THE WEST 924.27 FEET OF THE EAST 2599.27 FEET OF SAID SECTION 2, TOWNSHIP 38, RANGE 22 EAST, CONTAINING 157 ACRES, MORE OR LESS.

### MANATEE COUNTY

SECTION 31-37-22     SECTION 32-37-22     SECTION 36-37-22     SECTION 31-37-23

SARASOTA COUNTY                                                        DESOTO COUNTY

PID# 1011-00-1020          PID# 1011-00-1010          PID# 1009-00-1000
208 ACRES +/-              157 ACRES +/-              208.5 ACRES +/-
HOMESTEAD PARCEL

*Gilbert Ranch*

SECTION 3-38-22     SECTION 2-38-22     SECTION 1-38-22     SECTION 6-38-23

STATE ROAD 72

SECTION 10-38-22     SECTION 11-38-22     SECTION 12-38-22

### CERTIFICATION

I HEREBY CERTIFY THAT THIS SKETCH OF DESCRIPTION
TECHNICAL STANDARDS AS SET FORTH BY THE FLORIDA
LAND SURVEYORS IN CHAPTER 61G17-6, FLORIDA ADMIN
PURSUANT TO SECTION 472.027, FLORIDA STATUTES.

ESBER & ASSOCIATES, INC
CERTIFICATE OF AUTHORIZATION NO. LB 6854

*Alex S Esber*

BY: ALEX S. ESBER
PROFESSIONAL SURVEYOR
FLORIDA CERTIFICATE #4569

NOT VALID WITHOUT THE SIGNATURE AND THE ORIGINAL RAISED
SEAL OF A FLORIDA LICENSED SURVEYOR AND MAPPER

### SURVEYORS NOTE

1.  THIS DRAWING IS A DESCRIPTION SKETCH ONLY
AND DOES NOT REPRESENT A FIELD SURVEY OF
PARCEL DESCRIBED. INFORMATION SHOWN HEREON
WAS TAKEN FROM PUBLIC RECORDS.

2.  THE AREAS OF THE TRACTS SHOWN HEREON ARE
APPROXIMATED BASED ON INFORMATION FROM SARASOTA
COUNTY GIS SITE AND HAVE NOT BEEN VERIFIED BY
FIELD SURVEY.

| PROPERTY NORTH OF SR 72 SECTIONS 1 & 2, TWP. 38 S., RNG. 22 E. | SKETCH AND DESCRIPTION | ESBER & ASSOCIATES |
|---|---|---|
| | Gilbert Ranch | Professional Surveyors |
| | P70014 | |
| | DRAWN BY: AE     DATE 04/11/19 | 1370 Myakka Road • Sarasota, FL 34240 |
| | THE FIELD BK PG     JOB NUMBER P/A | (941)379-9831 • Fax (941)322-9038 |

EXHIBIT "A"

PDF Created with deskPDF PDF Creator X - Trial : http://www.docudesk.com

# EXHIBIT C

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA
CIVIL DIVISION

72 PARTNERS, LLC, a Florida limited
liability company,

        Plaintiff,

v.                                  CASE NO.  2011 CA 004209 NC

CECIL DAUGHTREY JR. and PATRICIA A.
DAUGHTREY, individually and as husband
and wife, and RICHARD O. BECKER, an individual,

        Defendants.
_____/

## MOTION FOR LEAVE TO FILE AMENDED ANSWER, DEFENSES, AND MOTION TO DISMISS PLAINTIFF'S VERIFIED AMENDED COMPLAINT, AND VERIFIED COUNTER-CLAIM AND VERIFIED THIRD-PARTY CLAIM

Defendants, Cecil Daughtrey Jr. and Patricia A. Daughtrey (the "Daughtreys"), by and through undersigned counsel, pursuant to Rule 1.190 of the Florida Rules of Civil Procedure, hereby file this Motion for Leave to File an Amended Answer, Defenses, and Motion to Dismiss Plaintiff's verified Amended Complaint, Verified Counter-Claim, and Verified Third-Party Claim and as grounds therefore state:

1.      On or about July 25, 2011, the Daughtreys, by and through their prior counsel, filed their initial Answer and Affirmative Defenses to Plaintiffs' Verified Amended Complaint wherein they raised allegations of various acts and omissions on the part of Plaintiff's predecessor in interest, for whom Plaintiff was later substituted in as a party to this action without the consent of the Daughtreys.

2.      The allegations raised by the Daughtreys include those which provide the basis for a motion to dismiss; for counter-claims against the Plaintiff, and for third-party claims

against Plaintiff's predecessor in interest. However, the Daughtreys' prior counsel did not actually file a motion to dismiss, counter-claims or third-party claims on their behalf.

3.       Justice requires that the Daughtreys be granted leave to file the Amended Answer, Defenses, and Motion to Dismiss Plaintiff's Verified Amended Complaint, Verified Counter-Claim, and Verified Third-Party Claim attached hereto.

WHEREFORE, the Daughtrey's respectfully request that this Curt issue an order granting them leave to file the Amended Answer, Defenses, and Motion to Dismiss Plaintiff's verified Amended Complaint, Verified Counter-Claim, and Verified Third-Party Claim attached hereto, and granting such further relief as the court may deem proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to Charles J. Pratt, Jr. Esquire, Harrison, Kirkland, Pratt & McGuire, P.A., P.O. Box 400, Bradenton, Florida 34206, by hand delivery to his physical office address, on this _15th_ day of _June_____, 2012.

Sandra Sanders, Esquire
Florida Bar No. 114847
SANDRA SANDERS, P.A.
18 East Oak Street
Arcadia, Florida 34266
Telephone:  (863) 491-5003
Facsimile:  (863) 494-5005
Co-Counsel for Cecil Daughtrey, Jr., and
Patricia A. Daughtrey

Page **2** of **2**

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA
CIVIL DIVISION

72 PARTNERS, LLC, a Florida limited
liability company,

      **Plaintiff,**

v.                                     **CASE NO. 2011 CA 004209 NC**

CECIL DAUGHTREY JR. and PATRICIA A.
DAUGHTREY, individually and as husband
and wife, and RICHARD O. BECKER, an individual,

      **Defendants,**

v.

BSLF HOLDINGS, LLC, a Florida limited
Liability company,

      **Third-Party Defendant,**
_____/

## AMENDED ANSWER, DEFENSES, AND MOTION
## TO DISMISS PLAINTIFF'S VERIFIED AMENDED COMPLAINT, AND
## VERIFIED COUNTER-CLAIM AND VERIFIED THIRD-PARTY CLAIM

      Defendants, Cecil Daughtrey Jr. and Patricia A. Daughtrey (the "Daughtreys"), by and

through undersigned counsel, hereby file this Amended Answer, Defenses, and Motion to

Dismiss Plaintiff's verified Amended Complaint, Verified Counter-Claim, and Verified Third-

Party Claim and state as follows:

### ANSWER

      Without waiving the grounds of the Motion to Dismiss set forth below, the Daughtreys,

by and through undersigned counsel, hereby Answer the Verified Amended Complaint and to

each correspondingly numbered paragraph state as follows:

Page **1** of 29

## Parties, Jurisdiction, and Venue

1.      Admitted for jurisdictional purposes only. Otherwise, denied.

2.      Without knowledge and, therefore, denied.

3.      Admitted.

4.      Admitted.

5.      Without knowledge and, therefore, denied.

6.      Admitted.

## General Allegations

7.      Admit that a copy of the Commitment is attached to the Amended Complaint as Exhibit A.  Deny any allegations in paragraph 7 that are inconsistent with the contents of Exhibit A as said document speaks for itself and is the best evidence of its contents.

8.      Admit that a copy of the Loan Agreement is attached to the Amended Complaint as Exhibit B.  Deny any allegations in paragraph 8 that are inconsistent with the contents of Exhibit B as said document speaks for itself and is the best evidence of its contents.  Further, deny that the legal description attached to the Loan Agreement describes the Daughtreys' real property.

9.      Admit that a copy of the Note is attached to the Amended Complaint as Exhibit C. Deny any allegations in paragraph 9 that are inconsistent with the contents of Exhibit C as said document speaks for itself and is the best evidence of its contents.

10.     Admit that a copy of the Mortgage is attached to the Amended Complaint as

Exhibit D.  Deny any allegations in paragraph 10 that are inconsistent with the contents of Exhibit D as said document speaks for itself and is the best evidence of its contents.  Also, deny that the mortgage granted a security interest in the Daughtreys' real or personal property.  Further, deny that Exhibit E is a current description of the collateral at issue.

11.    Admit that a copy of the Assignment of Leases is attached to the Amended Complaint as Exhibit F.   Deny any allegations in paragraph 11 that are inconsistent with the contents of Exhibit F as said document speaks for itself and is the best evidence of its contents.  Also, deny that the legal description attached to the Assignment of Leases describes the Daughtreys' real property.  Further, deny that the Assignment of Leases gave Plaintiff a security or other interest in the rents, issues, profits, revenues, royalties, rights and benefits from Daughtreys' real property.

12.    Not in a form that requires an admission or denial.  However, if deemed to be in such a form, then denied.

13.    Denied.

14.    Admit that the Daughtreys did not make the March 8, 2011 and subsequent payments, but deny that the same is an Event of Default, because, among other reasons, the Daughtreys were legally or otherwise excused from making such payments.

15.    Admit that a copy of the Notice is attached to the Amended Complaint as Exhibit G.  Deny any allegations in paragraph 15 that are inconsistent with the contents of Exhibit G as said document speaks for itself and is the best evidence of its

contents.

16.    Denied.

17.    Denied.  Specifically, plaintiff and/or plaintiff's predecessor in interest failed to

deliver all material disclosures required by the Truth in Lending Act ("TILA")

and Regulation Z, including but not limited to failing to clearly and accurately

disclose (1) the amount financed, (2) the finance charges, (3) the annual

percentage rate, including any variable feature disclosure, (4) the number,

amounts, and timing of payments scheduled to repay the obligations, and (5) the

total payments using these terms; and plaintiff did not, therefore, obtain an

enforceable security interest which is a condition precedent to filing and

maintaining a foreclosure action against the Daughtreys.  Moreover, plaintiff

failed to provide Patricia A. Daughtrey with a Notice from the Court Regarding

Lawsuits to Foreclose Mortgages on Homesteads as required under the applicable

administrative order(s).

18.    Without knowledge and, therefore, denied.

### Count I
### Foreclosure

19.    Admitted for jurisdictional purposes only.  Otherwise, denied.

20.    The Daughtreys re-allege their answers to paragraphs 1 through 18, inclusive,

above as though the same were fully set forth herein.

21.    Admit that the Daughtreys claim an interest in the collateral at issue.  Otherwise,

denied.

22.    Without knowledge, and, therefore, denied.

Page 4 of 29

## Count II
## Breach of Note

23.  The Daughtreys re-allege their answers to paragraphs 1 through 18, inclusive, above as though the same were fully set forth herein.

24.  Denied.

25.  Denied.

26.  Denied.

27.  Denied.

## Count III
## Fraudulent Transfer – Florida Statutes §726.105(1)(a)

28.  The Daughtreys re-allege their answers to paragraphs 1 through 18, inclusive, above as though the same were fully set forth herein.

29.  Admitted for jurisdictional purposes only.  Otherwise, denied.

30.  Deny any allegations in paragraph 30 that are inconsistent with the contents of the Loan Agreement as said document speaks for itself and is the best evidence of its contents.

31.  Deny that the Daughtreys received any "excess funds" under the terms of the Loan Agreement.

32.  Admitted that the Daughtreys did not pay any "Surplus Funds" to the Lender.

33.  Denied.

34.  Denied.

35.  Denied.

## Count IV
### Fraudulent Transfer – Florida Statutes §726.105(1)(b)

36.   The Daughtreys re-allege their answers to paragraphs 1 through 18, inclusive, and
      paragraphs 29-32, inclusive, above as though the same were fully set forth herein.

37.   Admitted for jurisdictional purposes only.  Otherwise, denied.

38.   Denied.

39    Denied.

40.   Denied.

## Count V
### Fraudulent Transfer – Florida Statutes §726.106(1)

41.   The Daughtreys re-allege their answers to paragraphs 1 through 18, inclusive, and
      paragraphs 29-32, inclusive, above as though the same were fully set forth herein.

42.   Admitted for jurisdictional purposes only.  Otherwise, denied.

43.   Denied.

44.   Denied.

45.   Denied.

## Count VI
### Construtive Trust

46.   The Daughtreys re-allege their answers to paragraphs 1 through 18, inclusive, and
      paragraphs 29-32, inclusive, above as though the same were fully set forth herein.

47.   Admitted for jurisdictional purposes only.  Otherwise, denied.

48.   Denied.

49.   Denied.

50.   Admitted that the Daughtreys did not pay any "Surplus Funds" to the Lender.

Page **6** of 29

51.    Denied.

52.    Denied.

### General Denial

All allegations of the Amended Verified Complaint that the Daughtreys have not specifically admitted are denied.

### DEFENSES

**First Defense**.    Motion to Dismiss.    Counts I, II, III, IV, V and VI of the Amended Verified Complaint are subject to the contemporaneously filed Motion to Dismiss, the grounds of which are not waived and are expressly reserved hereunder.

**Second Defense**.    Failure to Satisfy Conditions Precedent.    Plaintiff has failed to demonstrate its compliance with the conditions precedent to the institution and maintenance of Count I of this action as more specifically alleged in paragraph 17 of the Answer, above, and, accordingly, Plaintiff should take nothing on Count I of the Amended Verified Complaint.

**Third Defense**.    Set Off.    The Daughtreys are entitled to a set off for the damages caused by the Plaintiff and/or Plaintiff's predecessor in interest based upon the violations of the Truth in Lending Act, Home Ownership and Equity Protection Act, Florida Fair Lending Act, Florida Deceptive and Unfair Trade Practices Act, and Florida Consumer Collections Practices Act more specifically outlined in the Counter-claims and Third-Party Claims set forth below, the pertinent parts of which are incorporated herein by reference.

**Fourth Defense.**    Recoupment.  The Daughtreys are entitled to recoupment for the damages caused by the Plaintiff and/or Plaintiff's predecessor in interest based upon the violations of the Truth in Lending Act, Home Ownership and Equity Protection Act, Florida Fair Lending Act, Florida Deceptive and Unfair Trade Practices Act, and Florida Consumer

Filed for Record 06/15/2012 03:01 PM - Karen E. Rushing, Clerk of the Circuit Court - Sarasota County, FL - 2011 CA 004209 NC  Dkt-47550019  Page 9 of 31

Collections Practices Act more specifically outlined in the Counter-claims and Third-Party Claims set forth below, the relevant parts of which are incorporated herein by reference.

**Fifth Defense.**    Recession and Termination of Security Interest. The Daughtreys are entitled to recession and cancellation of the Loan Agreement, Note, Mortgage, Assignment of Leases, and otherloan documents, as well as termination of any security interest created in connection with the subject loan (together with the return of any funds given to Plaintiff, Plaintiff's predecessor in interest, or anyone else in connection with the loan, twice the finance charges in connection with the transaction, prejudgment interest and reasonable costs and attorney's fees) as a result of Plaintiff's and/or Plaintiff's predecessor in interest's violations of the Truth in Lending Act, Home Ownership and Equity Protection Act, Florida Fair Lending Act, Florida Deceptive and Unfair Trade Practices Act, and/or the Florida Consumer Collections Practices Act as more specifically outlined in the Counter-claims and Third-Party claims set forth below, the pertinent parts of which are incorporated herein by reference. As such, Plaintiff should take nothing on Counts I and II of the Amended Verified Complaint.

**Sixth Defense.**    Failure to Mitigate Damages. Assuming, without conceding, that Plaintiff suffered damages, the Daughtreys are not liable for such damages as was caused by Plaintiff's and/or Plaintiff's predecessor in interest's failure to mitigate its damages. By way of illustration, and not of limitation, despite repeated requests, Plaintiff, as well as Plaintiff's predecessor in interest, unreasonably failed or refused to participate in a proposed mitigation bank application with the Daughtreys and others whereby Plaintiff could have recouped any such damages.

**Seventh Defense.**    Breach of Duty of Good Faith. The subject mortgage and mortgage note, as a matter of law, includes an obligation that the parties perform in good faith, which,

Filed for Record 06/15/2012 03:01 PM - Karen E. Rushing, Clerk of the Circuit Court - Sarasota County, FL - 2011 CA 004209 NC  Dkt-47550019  Page 10 of 31

based on the facts set forth in the Counter-claims and Third-Party Claims, below, relevant portions of which are incorporated herein by reference, Plaintiff and Plaintiff's predecessors in interest refused or failed to do at all material times. Accordingly, Plaintiff should not be allowed in equity to accelerate the amounts due under the mortgage note and should be prohibited from utilizing the equitable remedy of foreclosure.

**Eighth Defense.**   Unclean Hands.  As more specifically outlined in the Counter-claims and Third-Party claims set forth below, the relevant portions of which are incorporated herein by reference. Plaintiff and/or Plaintiff's predecessor in interest violated the Truth in Lending Act, Home Ownership and Equity Protection Act, Florida Fair Lending Act, Florida Deceptive and Unfair Trade Practices Act, and Florida Consumer Collections Practices Act in connection with the subject loan.  Accordingly, the Plaintiff comes to the Court with unclean hands and, to the extent that Plaintiff claims equitable relief, the same should be denied.

**Nineth Defense.**   No Security Interest in Real Property.  Upon information and belief, the legal description contained in the Loan Agreement, Note, Mortgage, Assignment of Leases, and other loan documents fails to describe the Daughtrey's real property.  As such, no enforceable security interest was created which would support Plaintiff's foreclosure claim.  As such, Plaintiff should take nothing on Count I of the Amended Verified Complaint.

**Tenth Defense.**   Failure to Join Indispensable Parties.  Upon information and belief, the legal description contained in the Loan Agreement, Note, Mortgage, Assignment of Leases, and other loan documents fails to describe the Daughtrey's real property, and, instead, appears to describe real property owned by one or more non-parties. Such non-parties are indispensable to this action.  As such, Plaintiff should take nothing on Count I of the Amended Verified Complaint.

Filed for Record 06/15/2012 03:01 PM - Karen E. Rushing, Clerk of the Circuit Court - Sarasota County, FL - 2011 CA 004209 NC  Dkt-47550019  Page 11 of 31

**Eleventh Defense.**    Forfeiture of Entire Interest Charged.  Plaintiff is not entitled to enforce any interest charged because of the violations of Florida Fair Lending Act by Plaintiff and/or Plaintiff's predecessor in interest in connection with the subject loan, including but not limited to, inclusion of a prepayment penalty without offering the Daughtreys the choice of another product without a prepayment penalty; failure to provide the Daughtreys with written disclosures relating to the prepayment penalty; including an interest rate that is higher after default on the loan; including terms under which the aggregate amount of the regular periodic payments would not fully amortize the outstanding principal balance; and engaging in a pattern or practice of extending high-cost home loans to borrowers, including the Daughtreys, based upon the borrowers' collateral without regard to the borrowers' ability to repay the loan.  As such, any claim for interest should be denied, and the Daughtreys are entitled, as set off, recoupment, or otherwise, to the return of all interest previously paid.

## MOTION TO DISMISS

The Daughtreys, by and through undersigned counsel, hereby move the Court to dismiss Counts I, II, III, IV, V and VI of the Amended Verified Complaint (the "Complaint")  filed in this cause and, as grounds therefore, state as follows:

1.    Counts I, II, III, IV, V, and VI of the Complaint should be dismissed for failure to satisfy conditions precedent as more particularly set forth in the Answer to paragraph number 17, above, relevant portions of which are incorporated herein by reference.  As such, Plaintiff should take nothing on said Counts, and the Court should dismiss the same.

2.    Count III of the Complaint should be dismissed for failure to state a cause of action in that Plaintiff has not pled sufficient ultimate facts to establish that the Daughtreys transferred any of the loan proceeds or that they did so with actual intent to hinder, delay, or

Filed for Record 06/15/2012 03:01 PM - Karen E. Rushing, Clerk of the Circuit Court - Sarasota County, FL - 2011 CA 004209 NC  Dkt-47550019  Page 12 of 31

defraud Plaintiff.    As such, Plaintiff should take nothing on said Count, and the Court should dismiss the same.

3.    Count IV of the Complaint should be dismissed for failure to state a cause of action in that Plaintiff has not pled sufficient ultimate facts to establish that the Daughtreys (1) transferred any of the loan proceeds or (2) that, if they did so, that they (a) did not receive reasonably equivalent value in exchange for such a transfer or that at the time of any such transfer that they (b) were engaged in or about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction, or (c) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.    As such, Plaintiff should take nothing on said Count, and the Court should dismiss the same.

4.    Count V of the Complaint should be dismissed for failure to state a cause of action in that Plaintiff has not pled sufficient ultimate facts to establish that the Daughtreys (1) transferred any of the loan proceeds or (2) that, if they did so, that they (a) did not receive reasonably equivalent value in exchange for such a transfer, (b) were insolvent at the time of such transfer, or (c) became insolvent as a result of such transfer.    As such, Plaintiff should take nothing on said Count, and the Court should dismiss the same.

5.    Count VI of the Complaint should be dismissed for failure to state a cause of action in that Plaintiff has not pled sufficient ultimate facts to establish that (1) a constructive trust exists over any of the loan proceeds, (2) that the Daughtreys would be unjustly enriched if they were not required to return the loan proceeds, or (3) that the Daughtreys owed Plaintiff a fiduciary duty related to the loan proceeds or had a specific relationship of trust with the Plaintiff.    Further, Plaintiff's alleged cause of action for constructive trust is expressly

Filed for Record 06/15/2012 03:01 PM - Karen E. Rushing, Clerk of the Circuit Court - Sarasota County, FL - 2011 CA 004209 NC  Dkt-47550019 Page 13 of 31

contradicted by the language of the Loan Agreement. As such, Plaintiff should take nothing on said Count, and the Court should dismiss the same.

6.      Count I of the Complaint should be dismissed for failure to join indispensible parties in that, upon information and belief, the legal description contained in the Loan Agreement, Note, Mortgage, Assignment of Leases, and other loan documents fails to describe the Daughtrey's real property, and, instead, appears to describe real property owned by one or more non-parties. Such non-parties are indispensable to this action. As such, Plaintiff should take nothing on Count I of the Complaint, and the Court should dismiss the same.

WHEREFORE, Defendants request that the Court enter an order dismissing Counts I, II, III, IV, V, and VI of the Complaint, awarding the Daughtreys reasonable costs and attorney's fees, and granting such further relief as the Court may deem proper.

### VERIFIED COUNTER-CLAIM

Cecil Daughtrey, Jr., and Patricia A. Daughtrey (collectively, the "Daughtreys"), by and through undersigned counsel, hereby sue Plaintiff/Counter-Defendant, 72 Partners, LLC, a Florida limited liability company, (" 72 Partners") and allege as follows:

### COUNT I – DAMAGES - VIOLATION OF TRUTH IN LENDING ACT AND REGULATION Z (As Amended by the Home Ownership and Equity Protection Act)

1.      This is an action for damages which exceed $15,000.00 exclusive of interest, costs and attorney's fees resulting from the violation of the Truth in Lending Act ("TILA") and Regulation Z, as amended by the Home Ownership and Equity Protection Act ("HOEPA").

2.      72 Partners is a Florida limited liability company doing business in Sarasota County, Florida.

3.      The Daughtreys are individuals residing in Sarasota County, Florida.

Page 12 of 29

4.    Venue is proper in this Court in that one or more of the loan documents which are the subject of this action purport to create a security interest in real property owned by the Daughtreys and located in Sarasota County, Florida.

5.    On or about June 8, 2010, the Daughtreys and 72 Partners' predecessor in interest, BSLF Holdings, LLC, a Florida limited liability company, ("BSLF") closed on a loan transaction having a principal amount of $2,371,840.00 (the "Loan").

6.    In connection with the closing on the Loan, the Daughtreys and BSLF executed a Loan Agreement, a copy of which is attached as Exhibit "B" to the Amended Verified Complaint filed by BSLF in this action (the "Amended Complaint"), and is incorporated herein by reference.

7.    Also in connection with the closing on the Loan, the Daughtreys executed a Promissory Note (the "Note"), a Mortgage (the "Mortgage"), and an Assignment of Leases, Rents and Profits (the "Assignment of Leases"), copies of which are attached as Exhibits "C", "D" and "F", respectively, to Amended Complaint, and are incorporated herein by reference.

8.    Prior to the closing on the loan, Cecil Daughtrey, Jr., signed a loan commitment letter which was provided by BSLF in the original principal amount of $1,483,301.13 (the "Commitment").    A copy of the Commitment is attached as Exhibit "A" to the Amended Complaint, and is incorporated herein by reference.

9.    The Commitment was not signed by Patricia A. Daughtrey.

10.    The Commitment, the Loan Agreement, the Note, the Mortgage, and the Assignment of Leases are hereinafter collectively referred to as the "Loan Documents."

11.    Subsequent to the closing of the Loan and the filing of the Amended Complaint, BSLF and 72 Partners executed that certain Assignment of Note, Mortgage and other Loan

Documents dated July 20, 2011 and recorded in the Official Records of Sarasota County, Florida as Instrument # 2011085414 (the "Assignment").

12.     The Assignment was made without the knowledge or consent of the Daughtreys.

13.     Thereafter, on July 26, 2011, this Court entered an Order substituting 72 Partners in place of BSLF as the Plaintiff in this action (the "Substitution").

14.     The Substitution was done without the knowledge or consent of the Daughtreys.

15.     By virtue of the Assignment, the Substitution, or otherwise, 72 Partners is liable for all claims and defenses arising in connection with the Loan.

16.     The Loan was secured by the Mortgage which purports to contain a legal description that includes the Daughtreys' principal dwelling.

17.     At no time prior to the closing of the Loan transaction or the Assignment did either BSLF or 72 Partners obtain a survey of the real property which was intended to be collateral for the Loan.

18.     At all material times, BSLF and 72 Partners knew that the Loan was intended to be secured by the Daughtreys' principal dwelling.

19.     The Loan was for personal or consumer use and, therefore, was subject to the TILA and Regulation Z, as amended by HOEPA.

20.     At all material times, BSLF and 72 Partners knew that the Loan was for personal or consumer use.

21.     At all material times, the Daughtreys were both unemployed and did not have sufficient income, or otherwise have the ability, to repay the loan, and, at all material times, BSLF and 72 Partners had knowledge of the foregoing.

Filed for Record 06/15/2012 03:01 PM - Karen E. Rushing, Clerk of the Circuit Court - Sarasota County, FL - 2011 CA 004209 NC  Dkt-47550019  Page 16 of 31

22.    BSLF and/or 72 Partners violated the provisions of the TILA and Regulation Z, as amended by HOEPA, in ways including, but not limited to, extending credit to the Daughtreys without determining that they had the ability to repay the Loan; extending credit to the Daughtreys based on the value of the purported collateral without regard to the Daughtreys' repayment ability; failing to establish an escrow account for property taxes and homeowners insurance; and failing to deliver all material disclosures required by the TILA and Regulation Z, as amended by HOEPA, including but not limited to failing to clearly and accurately disclose (1) the amount financed, (2) the finance charges, (3) the annual percentage rate, including any variable feature disclosure, (4) the number, amounts, and timing of payments scheduled to repay the obligations, and (5) the total payments using these terms.

23.    As a result of BSLF's and/or 72 Partners' violations of the TILA and Regulation Z, the Daughtreys have suffered, and are continuing to suffer, damages.

24.    The Daughtreys have retained counsel to represent them in this action and are obligated to pay their counsel a reasonable fee for services rendered herein.

25.    The Daughtreys are entitled to recover reasonable attorneys' fees and costs from 72 Partners.

WHEREFORE, the Daughtreys demand judgment against 72 Partners for damages, including, but not limited to, the return of any funds given to BSLF or anyone else in connection with the loan, twice the finance charges in connection with the Loan transaction, prejudgment interest, reasonable attorneys' fees, costs, and such further relief as the Court may deem proper.

## COUNT II – RESCISSION - VIOLATION OF TRUTH IN LENDING ACT
## AND REGULATION Z
### (As Amended by the Home Ownership and Equity Protection Act)

26.     This is an action for rescission for violation of the Truth in Lending Act ("TILA")

and Regulation Z, as amended by the Home Ownership and Equity Protection Act ("HOEPA").

27.     The Daughtreys re-allege the allegations contained in paragraphs 2 through 25,

inclusive, above, as though the same were fully set forth herein.

28.     As a result of the violations of the TILA and Regulation Z, as amended by

HOEPA, committed by BSLF and/or 72 Partners, the Daughtreys are entitled to rescission of the

Loan and termination of any security interest created by the Loan.

WHEREFORE, the Daughtreys demand judgment against 72 Partners for rescission of

the Loan, termination of any security interest created by the loan, reasonable attorneys' fees,

costs, and such further relief as the Court may deem proper.

### COUNT III – CIVIL CONSPIRACY

29.     This is an action for damages that exceed $15,000.00, exclusive of interest, costs,

and attorneys' fees for civil conspiracy.

30.     The Daughtreys re-allege the allegations contained in paragraphs 2 through 25,

inclusive, above, as though the same were fully set forth herein.

31.     At all material times, the real property owned by the Daughtreys was, and still is,

worth substantially more than the amount of the Loan; contains wetlands and other natural

conditions that make it desirable for acquisition as part of an Environmental Land Acquisition

and Protection Program; and has a deep well located within its boundaries, the control of which

by certain persons or entities could cause such persons or entities to achieve, or maintain, a

monopoly power with regard to the areas' water supply.

Page **16** of **29**

32.     At all material times, BSLF and 72 Partners had knowledge of the foregoing.

33.     During the time from BSLF's first contact with the Daughtreys regarding the Loan through the present, BSLF and 72 Partners have had an agreement to try to achieve the goal of obtaining an ownership or other interest in the Daughtreys' land for less than fair compensation by unlawful means, and/or to obtain said real property with the intent of achieving or maintaining, or assisting others to achieve or maintain, a monopoly power.

34.     BLSF and 72 Partners and have committed overt acts in furtherance of their agreement, including, but not limited to, violating the TILA and Regulation Z, as amended by HOEPA, as set forth herein; violating the provisions of Florida Fair Lending Act in connection with the Loan in ways, including but not limited to, including a prepayment penalty without offering the Daughtreys the choice of another product without a prepayment penalty; failing to provide the Daughtreys with written disclosures relating to the prepayment penalty; including an interest rate that is higher after default on the loan; including terms under which the aggregate amount of the regular periodic payments would not fully amortize the outstanding principal balance; and engaging in a pattern or practice of extending high-cost home loans to borrowers, including the Daughtreys, based upon the borrowers' collateral without regard to the borrowers' ability to repay the loan; failing to provide the Daughtreys with a written Notice to borrower in substantially the form set forth in the Act; and prosecuting and maintaining the present action, seeking to foreclose on the Daughtreys' real property.

35.     As a result of the acts done by BSLF and 72 Partners in furtherance of this agreement, the Daughtreys have suffered, and are continuing to suffer, damages.

36.     72 Partners is jointly and severally liable for all damages resulting from the conspiracy.

WHEREFORE, the Daughtreys demand judgment against 72 Partners for damages, reasonable attorneys' fees, costs, and such further relief as the Court may deem proper.

## COUNT IV – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

37.     This is an action for damages which exceed $15,000.00, exclusive of interest, costs and attorney's fees for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

38.     The Daughtreys re-allege the allegations contained in paragraphs 2 through 25, inclusive, and paragraphs 31 through 36, inclusive, above, as though the same were fully set forth herein.

39.     Such actions on the part of BSLF and 72 Partners, constitute violations of FDUTPA.

40.     As a result of the violations of FDUTPA by BSLF and 72 Partners, the Daughtreys have suffered damages.

WHEREFORE, the Daughtreys demand judgment against 72 Partners for damages, reasonable attorneys' fees, costs, and such further relief as the Court may deem proper.

## COUNT V – VIOLATION OF FLORIDA CONSUMER COLLECTIONS PRACTICES ACT

41.     This is an action for damages and other statutory relief for violation of the Florida Consumer Collections Practices Act ("FCCPA").

42.     The Daughtreys re-allege the allegations contained in paragraphs 2 through 25, inclusive, above, as though the same were fully set forth herein.

43. Based on the foregoing, BSLF and 72 Partners knew, or should have known, that the Mortgage did not created a legitimate security interest in the real property owned by the Daughtreys.

44. Despite the foregoing, BSLF and 72 Partners brought and maintained the present action to attempt to foreclose the Mortgage.

45. Such actions on the part of BSLF and 72 Partners, constitute violations of the FCCPA.

46. As a result of the violations of the FCCPA by BSLF and 72 Partners, the Daughtreys have suffered damages.

WHEREFORE, the Daughtreys demand judgment against 72 Partners for damages, reasonable attorneys' fees, costs, and such further relief as the Court may deem proper.

## COUNT VI –CIVIL RICO
### (Civil Remedies for Criminal Practices Act)

47. This is an action for damages which exceed $15,000.00, exclusive of interest, costs and attorney's fees for violation of the Civil Remedies for Criminal Practices Act ("CCFCPA").

48. The Daughtreys re-allege the allegations contained in paragraphs 2 through 25, inclusive, paragraphs 31 through 34, inclusive, and paragraphs 43 and 44, above, as though the same were fully set forth herein.

49. BSLF and 72 Partners conspired or endeavored to acquire and maintain an interest in the real property owned by the Daughtreys, through a pattern of criminal activity or through the collection of an unlawful debt.

Page 19 of 29

50.     At all material times, BSLF and 72 Partners were associated with an enterprise, which from approximately January, 2010 through the present has functioned as a continuing unit and has been engaged in an ongoing and continuing course of conduct with the common purpose of obtaining an ownership or other interest in the Daughtreys' land, and/or for the purpose of achieving or maintaining a monopoly power.

51.     In furtherance of such goals, the enterprise engaged in a pattern of criminal activity including, but not limited to, violations of Chapter 838, Florida Statutes, relating to bribery and misuse of public office, and violations of §817.54, Florida Statutes, by obtaining the Mortgage, Note and other Loan Documents by false pretenses.

52.     BSLF and 72 Partners participated and/or conspired to participate in said enterprise through a pattern of criminal activity and/or the collection of an unlawful debt.

53.     As a direct result of the foregoing, the Daughtreys have suffered, and are continuing to suffer, damages.

WHEREFORE, the Daughtreys demand judgment against 72 Partners for damages, reasonable attorneys' fees, costs, and such further relief as the Court may deem proper.

## VERIFIED THRID-PARTY CLAIM

Cecil Daughtrey, Jr., and Patricia A. Daughtrey (collectively, the "Daughtreys"), by and through undersigned counsel, hereby sues Third-Party Defendant, BSLF Holdings, LLC, a Florida limited liability company, (" BSLF") and allege as follows:

## COUNT I – DAMAGES - VIOLATION OF TRUTH IN LENDING ACT
## AND REGULATION Z
## (As Amended by the Home Ownership and Equity Protection Act)

1.     This is an action for damages which exceed $15,000.00 exclusive of interest, costs and attorney's fees resulting from the violation of the Truth in Lending Act ("TILA") and Regulation Z, as amended by the Home Ownership and Equity Protection Act ("HOEPA").

2.     BSLF is a Florida limited liability company doing business in Sarasota County, Florida.

3.     The Daughtreys are individuals residing in Sarasota County, Florida.

4.     Venue is proper in this Court in that one or more of the loan documents which are the subject of this action purport to create a security interest in real property owned by the Daughtreys and located in Sarasota County, Florida.

5.     On or about June 8, 2010, the Daughtreys and BSLF closed on a loan transaction having a principal amount of $2,371,840.00 (the "Loan").

6.     In connection with the closing on the Loan, the Daughtreys and BSLF executed a Loan Agreement, a copy of which is attached hereto as Exhibit "A" and is incorporated herein by reference.

7.     Also in connection with the closing on the Loan, the Daughtreys executed a Promissory Note (the "Note"), a Mortgage (the "Mortgage"), and an Assignment of Leases, Rents and Profits (the "Assignment of Leases"), copies of which are attached hereto as Exhibits "B," "C" and "D," respectively, and are incorporated herein by reference.

8.     Prior to the closing on the loan, Cecil Daughtrey, Jr., signed a loan commitment letter which was provided by BSLF in the original principal amount of $1,483,301.13 (the

"Commitment").    A copy of the Commitment is attached hereto as Exhibit "E" and is incorporated herein by reference.

9.    The Commitment was not signed by Patricia A. Daughtrey.

10.    The Commitment, the Loan Agreement, the Note, the Mortgage, and the Assignment of Leases are hereinafter collectively referred to as the "Loan Documents."

11.    Subsequent to the closing of the Loan and the filing of the Amended Complaint, BSLF and 72 Partners, LLC, a Florida limited liability company, executed that certain Assignment of Note, Mortgage and other Loan Documents dated July 20, 2011 and recorded in the Official Records of Sarasota County, Florida as Instrument # 2011085414 (the "Assignment").

12.    The Assignment was made without the knowledge or consent of the Daughtreys.

13.    Thereafter, on July 26, 2011, this Court entered an Order substituting 72 Partners in place of BSLF as the Plaintiff in this action (the "Substitution").

14.    The Substitution was done without the knowledge or consent of the Daughtreys.

15.    Despite the Assignment and the Substitution, BSLF remains liable to the Daughtreys for all claims and defenses arising in connection with the Loan.

16.    The Loan was secured by the Mortgage which purports to contain a legal description that includes the Daughtreys' principal dwelling.

17.    At no time prior to the closing of the Loan transaction or the Assignment did BSLF obtain a survey of the real property which was intended to be collateral for the Loan.

18.    At all material times, BSLF knew that the Loan was intended to be secured by the Daughtreys' principal dwelling.

19.    The Loan was for personal or consumer use and, therefore, was subject to the TILA and Regulation Z, as amended by HOEPA.

20.    At all material times, BSLF knew that the Loan was for personal or consumer use.

21.    At all material times, the Daughtreys were both unemployed and did not have sufficient income, or otherwise have the ability, to repay the loan, and, at all material times, BSLF had knowledge of the foregoing.

22.    BSLF violated the provisions of the TILA and Regulation Z, as amended by HOEPA, in ways including, but not limited to, extending credit to the Daughtreys without determining that they had the ability to repay the Loan; extending credit to the Daughtreys based on the value of the purported collateral without regard to the Daughtreys' repayment ability; failing to establish an escrow account for property taxes and homeowners insurance; and failing to deliver all material disclosures required by the TILA and Regulation Z, as amended by HOEPA, including but not limited to failing to clearly and accurately disclose (1) the amount financed, (2) the finance charges, (3) the annual percentage rate, including any variable feature disclosure, (4) the number, amounts, and timing of payments scheduled to repay the obligations, and (5) the total payments using these terms.

23.    As a result of BSLF's violations of the TILA and Regulation Z, the Daughtreys have suffered, and are continuing to suffer, damages.

24.    The Daughtreys have retained counsel to represent them in this action and are obligated to pay their counsel a reasonable fee for services rendered herein.

25.    The Daughtreys are entitled to recover reasonable attorneys' fees and costs from BSLF.

WHEREFORE, the Daughtreys demand judgment against BSLF for damages, including, but not limited to, the return of any funds given to BSLF or anyone else in connection with the loan, twice the finance charges in connection with the Loan transaction, prejudgment interest, reasonable attorneys' fees, costs, and such further relief as the Court may deem proper.

## COUNT II – RESCISSION - VIOLATION OF TRUTH IN LENDING ACT AND REGULATION Z (As Amended by the Home Ownership and Equity Protection Act)

26.     This is an action for rescission for violation of the Truth in Lending Act ("TILA") and Regulation Z, as amended by the Home Ownership and Equity Protection Act ("HOEPA").

27.     The Daughtreys re-allege the allegations contained in paragraphs 2 through 25, inclusive, above, as though the same were fully set forth herein.

28.     As a result of the violations of the TILA and Regulation Z, as amended by HOEPA, committed by BSLF, the Daughtreys are entitled to rescission of the Loan and termination of any security interest created by the Loan.

WHEREFORE, the Daughtreys demand judgment against BSLF for rescission of the Loan, termination of any security interest created by the loan, reasonable attorneys' fees, costs, and such further relief as the Court may deem proper.

## COUNT III – CIVIL CONSPIRACY

29.     This is an action for damages that exceed $15,000.00, exclusive of interest, costs, and attorneys' fees for civil conspiracy.

30.     The Daughtreys re-allege the allegations contained in paragraphs 2 through 25, inclusive, above, as though the same were fully set forth herein.

31.    At all material times, the real property owned by the Daughtreys was, and still is, worth substantially more than the amount of the Loan; contains wetlands and other natural conditions that make it desirable for acquisition as part of an Environmental Land Acquisition and Protection Program; and has a deep well located within its boundaries, the control of which by certain persons or entities could cause such persons or entities to achieve, or maintain, a monopoly power with regard to the areas' water supply.

32.    At all material times, BSLF and 72 Partners had knowledge of the foregoing.

33.    During the time from BSLF's first contact with the Daughtreys regarding the Loan through the present, BSLF and 72 Partners have had an agreement to try to achieve the goal of obtaining an ownership or other interest in the Daughtreys' land for less than fair compensation by unlawful means, and/or to obtain said real property with the intent of achieving or maintaining, or assisting others to achieve or maintain, a monopoly power.

34.    BLSF and 72 Partners and have committed overt acts in furtherance of their agreement, including, but not limited to, violating the TILA and Regulation Z, as amended by HOEPA, as set forth herein; violating the provisions of Florida Fair Lending Act in connection with the Loan in ways, including but not limited to, including a prepayment penalty without offering the Daughtreys the choice of another product without a prepayment penalty; failing to provide the Daughtreys with written disclosures relating to the prepayment penalty; including an interest rate that is higher after default on the loan; including terms under which the aggregate amount of the regular periodic payments would not fully amortize the outstanding principal balance; and engaging in a pattern or practice of extending high-cost home loans to borrowers, including the Daughtreys, based upon the borrowers' collateral without regard to the borrowers' ability to repay the loan; failing to provide the Daughtreys with a written Notice to borrower in

substantially the form set forth in the Act; and prosecuting and maintaining the present action, seeking to foreclose on the Daughtreys' real property.

35.     As a result of the acts done by BSLF and 72 Partners in furtherance of this agreement, the Daughtreys have suffered, and are continuing to suffer, damages.

36.     BSLF is jointly and severally liable for all damages resulting from the conspiracy.

WHEREFORE, the Daughtreys demand judgment against BSLF for damages, reasonable attorneys' fees, costs, and such further relief as the Court may deem proper.

## COUNT IV – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

37.     This is an action for damages which exceed $15,000.00, exclusive of interest, costs and attorney's fees for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

38.     The Daughtreys re-allege the allegations contained in paragraphs 2 through 25, inclusive, and paragraphs 31 through 36, inclusive, above, as though the same were fully set forth herein.

39.     Such actions on the part of BSLF constitute violations of FDUTPA.

40.     As a result of the violations of FDUTPA by BSLF, the Daughtreys have suffered, and are continuing to suffer, damages.

WHEREFORE, the Daughtreys demand judgment against BSLF for damages, reasonable attorneys' fees, costs, and such further relief as the Court may deem proper.

## COUNT V – VIOLATION OF FLORIDA CONSUMER COLLECTIONS PRACTICES ACT

41.     This is an action for damages and other statutory relief for violation of the Florida Consumer Collections Practices Act ("FCCPA").

Page **26** of 29

42.     The Daughtreys re-allege the allegations contained in paragraphs 2 through 25, inclusive, above, as though the same were fully set forth herein.

43.     Based on the foregoing, BSLF knew, or should have known, that the Mortgage did not created a legitimate security interest in the real property owned by the Daughtreys.

44.     Despite the foregoing, BSLF brought and maintained the present action to attempt to foreclose the Mortgage.

45.     Such actions on the part of BSLF constitute violations of the FCCPA.

46.     As a result of the violations of the FCCPA by BSLF, the Daughtreys have suffered, and are continuing to suffer, damages.

WHEREFORE, the Daughtreys demand judgment against BSLF for damages, reasonable attorneys' fees, costs, and such further relief as the Court may deem proper.

## COUNT VI –CIVIL RICO
### (Civil Remedies for Criminal Practices Act)

47.     This is an action for damages which exceed $15,000.00, exclusive of interest, costs and attorney's fees for violation of the Civil Remedies for Criminal Practices Act ("CCFCPA").

48.     The Daughtreys re-allege the allegations contained in paragraphs 2 through 25, inclusive, paragraphs 31through 34, inclusive, and paragraphs 43 and 44, above, as though the same were fully set forth herein.

49.     BSLF, with 72 Partners and/or others, conspired or endeavored to acquire and maintain an interest in the real property owned by the Daughtreys, through a pattern of criminal activity or through the collection of an unlawful debt.

Page **27** of **29**

50.     At all material times, BSLF was associated with an enterprise, which from approximately January, 2010 through the present has functioned as a continuing unit and has been engaged in an ongoing and continuing course of conduct with the common purpose of obtaining an ownership or other interest in the Daughtreys' land, and/or for the purpose of achieving or maintaining a monopoly power.

51.     In furtherance of such goals, the enterprise engaged in a pattern of criminal activity including, but not limited to, violations of Chapter 838, Florida Statutes, relating to bribery and misuse of public office, and violations of §817.54, Florida Statutes, by obtaining the Mortgage, Note and other Loan Documents by false pretenses.

52.     BSLF participated in, and/or conspired to participate in, said enterprise through a pattern of criminal activity and/or the collection of an unlawful debt.

53.     As a direct result of the foregoing, the Daughtreys have suffered, and continue to suffer, damages.

WHEREFORE, the Daughtreys demand judgment against BSLF for damages, reasonable attorneys' fees, costs, and such further relief as the Court may deem proper.

Dated this _15th_ day of ___June___, 2012.

_(signature)_

Sandra Sanders, Esquire
Florida Bar No. 114847
SANDRA SANDERS, P.A.
18 East Oak Street
Arcadia, Florida 34266
Telephone: (863) 491-5003
Facsimile: (863) 494-5005
Co-Counsel for Cecil Daughtrey, Jr., and
Patricia A. Daughtrey

Page **28** of **29**

## VERIFICATION

*Cecil Daughtrey*

**Cecil Daughtrey, Jr.,** Defendant
Counter-Plaintiff/Third-Party Plaintiff

*Patricia A. Daughtrey*

**Patricia A. Daughtrey,** Defendant
Counter-Plaintiff/Third-Party Plaintiff

STATE OF FLORIDA
COUNTY OF DESOTO

BEFORE ME, the undersigned authority, personally appeared **Cecil Daughtrey, Jr.** and **Patricia A. Daughtrey** (collectively the "Verifiers") who, after being duly sworn, stated that: (a) Verifiers' names are **Cecil Daughtrey, Jr.**, and **Patricia A. Daughtrey**; (b) Verifiers are parties to this action; (c)    Verifiers have personal knowledge of the facts and circumstances set forth in the Verified Counter-Claim and Verified Third-Party Complaint; (d) the Verifiers have read the Verified Counter-Claim and Verified Third-Party Complaint; (e) the facts stated in the Verified Counter-Claim and Verified Third-Party Complaint are true and correct, and the exhibits attached to the Verified Third-Party Complaint are true and correct copies of the exhibits; and (f) Verifiers are over the age of 18.

Sworn to and subscribed before me this _15 th_ day of _June_, 2012, by **Cecil Daughtrey, Jr.**, and **Patricia A. Daughtrey** who[check one] _✓_ are personally known to me or ____ have produced _____ as identification.



SANDRA SANDERS
MY COMMISSION # DD 916594
EXPIRES: August 13, 2013
Bonded Thru Budget Notary Services

*Sandra Sanders* , Notary Public
My Commission No:_____
My Commission Expires:_____

Page **29** of 29

Filing # 45939302 E-Filed 08/31/2016 04:28:48 PM

8/31/16BRW- | W:\W docs\Clients\004041\15331\00151344.DOCX

IN THE CIRCUIT COURT OF THE 12th
JUDICIAL    CIRCUIT    IN    AND    FOR
SARASOTA COUNTY, FLORIDA

**CASE #:   16-000205 CA NC**

72 PARTNERS, LLC, a Florida limited
liability company,

       Plaintiff,

vs.

JOSEPH D. GILBERTI, JR., an individual;
ROBERT J. FLINT, an individual; and
FLINT PROPERTIES II, LLC,

       Defendants.

_____

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO QUIET TITLE COUNT

       **COMES NOW** the Defendant, Joseph D. Gilberti, Jr. ("GILBERTI"), by and through his

undersigned counsel and pursuant to Fla. R. Civ. P. 1.510, and files this his Memorandum in

Opposition to Plaintiff 72 PARTNERS, LLC's ("72 PARTNERS") Motion for Partial Summary

Judgment as to its Quiet Title Count, and in support thereof states as follows:

### INTRODUCTION AND SUMMARY OF ARGUMENTS

       This dispute arises out of 72 PARTNERS' alleged title, granted via bankruptcy trustee's

quitclaim deed, to real property in Sarasota County particularly described as:

> All that part of Section 1, Township 38 South, Range 22 East, lying North of State
> Road 72, All Section 2, Township 38 South, Range 22 East, LESS right of way
> for State Road 72, All Section 11, Township 38 South, Range 22 East, The North
> 1/2 and the West 1/4 of the South 1/2 of Section 14, Township 38 South, Range
> 22 East, All of Section 15, Township 38 South, Range 22 East, LESS railroad
> right of way, The West 1/2 of Section 16, Township 38 South, Range 22 East,
> LESS a parcel of land in Sections 2, 11, 14 and 15, lying within the following
> described parcel: Begin at the NW corner of said Section 11; thence South 01
> degrees 59'53" West, 5340.95 feet to the SW corner of said Section 11, thence

{00175155.DOCX; 1 }

North 88 degrees 22'46" West, 5377.94 feet to the NW corner of said Section 15; thence South 02 degrees 00'10" West, 1320 feet; thence South 88 degrees 22'46" East, 6698.08 feet; thence North 01 degrees 59'53" East, 7240.95 feet to the South Right-of-Way line of State Road 72; thence South 66 degrees 13'13" West, 1042.16 feet along said South Right-of-Way of State Road 72; thence along said South Right-of-Way of State Road 72, Southwesterly along a curve to the right 400.45 feet to the West line of said Section 2; thence South 02 degrees 14'29" West, 18.87 feet to the Point of Beginning, LESS Oil and Mineral Right, all lying and being in Sarasota County, Florida

LESS AND EXCEPT

Commence at the intersection of the East section line of Section 2, Township 38 South, Range 22 East, Sarasota County, Florida and the North right-of-way line of SR 72. Then southwesterly along north right-of-way line of SR 72 a distance of 1,870 feet more or less to the point of beginning of the property. This point would be 1,752 feet westerly as measured perpendicular from the east line of said Section 2, Township 38 South, and Range 22 East. Then continue southwesterly along north right-of-way SR 72 for 498 feet; thence northerly parallel to the east section line of Section 2, Township 38 South, Range 22 East a distance of 916 feet. Thence westerly and parallel to the north section line of Section 2, Township 38 South, Range 22 East a distance of 1,527 feet; Thence northerly 2,717 feet more or less parallel to the East section line of Section 2, Township 38 South, Range 22 East to the north section line of Section 2, Township 38 South, Range 22 East; Thence east along the north section line of Section 2, Township 38 South, Range 22 East a distance of 3,814 feet more or less to the northeast corner of said Section 2, Township 38 South, Range 22 East; Thence continue along the north line of Section 1, Township 38 South, Range 22 East a distance of 90 feet; Thence southerly parallel to the west section line of Section 1, Township 38 South, Range 22 East a distance of 603 feet; Thence westerly parallel to the north section line of Section 1, Township 38 South, Range 22 East a distance of 90 feet to the west section line of Section 1, Township 38 South, Range 22 East; Thence westerly parallel to the north section line of Section 2, Township 38 South, Range 22 East a distance of 1,752 feet; Thence southerly parallel to the east section line of Section 2. Township 38 South, Range 22 East a distance of 2,826 feet more or less to the point of beginning.

(hereinafter "the Property"). Filed contemporaneously with this Memorandum is GILBERTI's

Affidavit Opposing Plaintiff's Motion for Partial Summary Judgment.

Prior to July 26, 2013, Cecil Daughtrey Jr. and Patricia A. Daughtrey (collectively "Daughtrey") were the owners of the entire Property. However, on July 26, 2013, Daughtrey conveyed, via properly witnessed and executed Warranty Deed, a portion of the Property to GILBERTI. A true and correct copy of the Warranty Deed is attached hereto as **EXHIBIT "A"**. That portion of the Property conveyed by Daughtrey to GILBERTI is more particularly described as:

> All that part of Section 1 lying North of State Road No. 72 and all that part of the East 1675.00 feet of Section 2 lying North of State Road No. 72 and the North 2068.04 feet of the West 924.27 feet of the East 2,599.27 feet of said Section 2, all in Township 38 South, Range 22 East, Sarasota County, Florida

(hereinafter the "Gilberti Ranch").

On November 7, 2013, and after conveying the Gilberti Ranch, Daughtrey filed for Chapter 7 bankruptcy protection. As a result thereof, and pursuant to 11 U.S.C. § 541(a), title to the Property, less that portion previously conveyed by Daughtrey and comprising the Gilberti Ranch, vested in the Chapter 7 Bankruptcy Trustee, Luis E. Rivera II, Esq. ("Rivera"). Thereafter, on June 10, 2014, GILBERTI recorded the deed by which he took title to the Gilberti Ranch in the Official Records of Sarasota County, Florida via Instrument Number 2014067954 (Exhibit A). While Rivera, pursuant to 11 U.S.C. §544 (a) (3), had full legal authority to avoid Daughtrey's conveyance of the Gilberti Ranch, he did not do so.

On October 7, 2014, the Bankruptcy Court in and for the Middle District of Florida entered its Order Granting Rivera's Amended Motion and Notice of Proposed Compromise of Controversy Between Trustee and 72 PARTNERS (the "Order"). A true and correct copy the Order is attached hereto as **EXHIBIT "B"**. The order provides, in Paragraph 3.f., that the "Trustee shall execute a Trustee's Deed conveying the Remaining Real Property 'as is' with no

{00175155.DOCX; 1 }

warranties of any kind." Furthermore, The resulting Trustee's deed, dated October 7, 2014 and recorded October 31, 2014 via Instrument Number 2014130932 in the Official Records of Sarasota County, granted and quitclaimed to 72 PARTNERS no more than the Daughtrey Bankruptcy Estate's interest in the Property, without warranty or representation as to other interests, and conveyed the Property "'as is, where is.'" A true and correct copy of the Trustee's Deed is attached hereto as **EXHIBIT "C"**.

As 72 PARTNERS took title to the Property via Trustee's Deed in the nature of a quitclaim deed without warranty or representation as to any interests in the Property other than that of the Bankruptcy Estate, and with notice of GILBERTI's interest in the Gilberti Ranch pursuant to GILBERTI's prior recordation of that Warranty Deed by which he claims title thereto on June 10, 2014, in the Official Records of Sarasota County, Florida via Instrument Number 2014067954, 72 PARTNERS took title to the Property subject to GILBERTI's prior recorded interest in property contained within the boundary of that Property described in the Trustee's Deed referenced in the instant matter.   Therefore, a genuine issue of material fact exists as to whether 72 PARTNERS or GILBERTI holds superior title to the Gilberti Ranch within the Property.

Moreover, a genuine issue of material fact exists as to whether the trustee's quitclaim deed by which 72 PARTNERS claims title effected a valid conveyance of the Property at issue. The legal description within the deed, exclusive of that language carving out the Daughtrey's homesteaded property,   matches the description found in the mortgage upon which 72 PARTNERS sought foreclosure prior to Daughtrey's bankruptcy filing. On October 8, 2012, and in the matter of 72 PARTNERS' foreclosure action against the Daughtreys, et al. in Case No.

2011 CA 004209 NC, Alex S. Esber, a professional surveyor licensed by the State of Florida, swore in affidavit (the "Esber Affidavit") to this circuit that "the legal description attached to the mortgage as Exhibit "A" recorded in the official records of Sarasota County, Instrument # 2010072083 . . . is defective; . . . does not definitively describe the property of [Daughtrey, and] does not encompass the property of [Daughtrey]." A true and correct copy of the referenced mortgage and the Esber Affidavit is attached hereto as **EXHIBIT "D"** and **EXHIBIT "E"**, respectively

Based upon the foregoing, genuine issues of material fact exist as to GILBERTI's interest in the Gilberti Ranch portion of the Property, and potentially as to Plaintiff's interest in the entirety of the Property, and Plaintiff's Motion for Partial Summary Judgment as to the Quiet Title Claim must therefore be denied by this honorable Court as a matter of law.

## MEMORANDUM OF LAW

### Standard for Summary Judgment

Florida law is well established that in order to be entitled to a summary judgment, the moving party must show conclusively the absence of any genuine issue of material fact. Rule 1.510 Fla.R.Civ.P.; *Moore v. Morris*, 475 So. 2d 666, 668 (Fla. 1985). Summary judgment should not be granted unless the facts are so completely undisputed that nothing remains other than questions of law. *Id.* at 668; *CSX Transp., Inc. v. Pasco County*, 660 So. 2d 757, 759 (Fla. 2nd DCA 1995) (explaining that "[t]he initial burden is on the movant to demonstrate the nonexistence of any material fact. If genuine issues of fact exist, these issues may not be resolved in the summary proceeding.").

In reviewing a motion for summary judgment, the trial court must draw every inference

in favor of the party against whom summary judgment is sought. *Albelo v. Southern Bell*, 682 So. 2d 1126, 1129 (Fla. 4th DCA 1996). Specifically, if the "evidence raises any issues of material fact, or if it is conflicting, or if it will permit different reasonable inferences, or if it tends to prove the issues, summary judgment cannot be granted." *Id*. Moreover, if the evidence of record demonstrates even the possibility of an issue of fact or the slightest doubt as to the existence of a factual issue, the doubt must be resolved in favor of the non-moving party and summary judgment must be denied. *Id*. Likewise, even if the facts are undisputed, summary judgment should not be granted if different inferences can be reasonably drawn from the undisputed facts. *Id*. Because there are several genuine disputes over facts material to the instant matter, Plaintiff's Motion for Summary Judgment as to its Quiet Title count must be denied.

## 72 PARTNERS TOOK TITLE TO THE PROPERTY
## SUBJECT TO GILBERTI'S PRIOR RECORDED INTEREST THEREIN

1.      "The [bankruptcy] trustee shall have, as of the commencement of the [bankruptcy] case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. § 544.

2.      However, the avoidance of such transfers does not merely occur as a matter of course, and the bankruptcy trustee must actually exercise its rights and powers as a bona fide purchaser to avoid such transfers of property, including previously unrecorded interests in real

{00175155.DOCX; 1 }

property. *See, e.g., In re Eiland*, 260 B.R. 301 (Bankr. M.D. Fla. 2000); *In re Shannis*, 229 B.R. 234, (Bankr. M.D. Fla. 1999); *In re Schiavone*, 209 B.R. 751 (Bankr. S.D. Fla. 1997), aff'd (Aug. 19, 1997).

3.      The bankruptcy trustee must bring on and prevail in an actual avoidance action in an adversary proceeding in order to avoid a prior unperfected interest. *See, e.g., In re Pearlman*, 460 B.R. 306 (Bankr. M.D. Fla. 2011); *In re Leonard*, 419 B.R. 74 (Bankr. S.D. Fla. 2009).

4.      In the underlying bankruptcy, Rivera, as the bankruptcy trustee, took title to the Property on of November 7, 2013, as of Daughtrey's filing for Chapter 7 bankruptcy protection.

5.      On June 10, 2014, GILBERTI recorded the Warranty Deed by which he took title to the Gilberti Ranch on July 26, 2013. The Warranty Deed was recorded in the Official Records of Sarasota County, Florida via Instrument Number 2014067954. Exhibit A.

6.      In the underlying bankruptcy, Rivera, as the bankruptcy trustee, failed to bring an adversary proceeding for avoidance of the transfer of the Gilberti Ranch from Daughtrey to GILBERTI. Therefore, GILBERTI's interest in the Gilberti Ranch remains unavoided.

7.      On October 7, 2014, the Bankruptcy Court for the Middle District of Florida entered its Order providing that the "Trustee shall execute a Trustee's Deed Conveying the [Property] 'as is' with no warranties of any kind." Exhibit B.

8.      Rivera, as the bankruptcy trustee, conveyed the Property to 72 PARTNERS, via Trustee's Deed, "'as is, where is'" without any warranty or representation as to any other interests in the Property on October 7, 2014. Exhibit C.

9.      The Trustee's Deed states, within paragraph 4, that it is "executed only as a quit-claim deed as to the bankruptcy estate's interest in the Real Property conveyed herein." Exhibit

C.

10.    72 PARTNERS recorded the Trustee's Deed conveying the Property on October 31, 2014 via Instrument Number 2014130992 in the Official Records of Sarasota County, Florida.

11.    "In the absence of fraud, mistake, or other ground for equitable relief, one who accepts a quitclaim deed is conclusively presumed to have agreed to take the title subject to all risks as to defects or [e]ncumbrances." *Morris v. Osteen*, 948 So. 2d 821, 824 n.1 (Fla. 5th DCA 2007); *St. Clair v. City Bank & Trust Co. of St. Petersburg*, 175 So. 2d 791, 792 (Fla. 2d DCA 1965).

12.    "It is well established that the execution of a quitclaim deed, without more, does not necessarily import that the grantor possesses *any interest at all* and if the grantor has no interest in the land described at the time of conveyance, *the quitclaim conveys nothing to the grantee*." *Miami Holding Corp. v. Matthews*, 311 So. 2d 802, 803 (Fla. 3d DCA 1975) (emphasis added).

13.    Additionally, the "law in Florida has always been that an unrecorded deed does not affect its validity as between the parties and their privies." *Fryer v. Morgan*, 714 So. 2d 542, 545 (Fla. 3d DCA 1998).

14.    "Moreover, a deed takes effect from the date of delivery, and the recording of a deed is not essential to its validity as between the parties or those taking with notice. . . . The recording statute has always been primarily intended to protect the rights of bona fide purchasers of property and creditors of property owners, rather than the immediate parties to the conveyance." *Sweat v. Yates*, 463 So. 2d 306, 307 (Fla. 1st DCA 1984).

Sarasota Circuit Court Case # 16-000205 CA NC
LandTech Design Group, Inc. vs. 72 Partners, LLC
Defendant Gilberti's Memorandum in Opposition to Summary Judgment
Page 9 of 12

15.    "The act of recording an instrument in accordance with [§695.01, Fla. Stat.] constitutes constructive notice of a prior encumbrance on the property which is the subject of the instrument." *Lafitte v. Gigliotti Pipeline, Inc.*, 624 So. 2d 844, 845 (Fla. 2d DCA 1993).

16.    Therefore, as GILBERTI recorded the instrument by which he took title to the Gilberti Ranch prior to Rivera's quitclaim of the Property to 72 PARTNERS via the Trustee's Deed, 72 PARTNERS took title with constructive notice of GILBERTI's prior interest in the Property, and hence 72 PARTNERS' interest in the Property is subject to GILBERTI's unavoided prior recorded interest.

## THE TRUSTEE'S DEED BY WHICH 72 PARTNERS ALLEGES TITLE DOES NOT SUFFICIENTLY DESCRIBE THE PROPERTY, AND THEREFORE CONVEYED NO INTEREST TO PLAINTIFF

17.    "To effect a valid conveyance of land, a deed must contain a legal description which is sufficiently definite and certain to permit the land to be identified." *Mitchell v. Thomas*, 467 So. 2d 326, 328 (Fla. 2d DCA 1985).

18.    "[A] legal description satisfies this requirement if the description of the land conveyed in a deed is such that 'a surveyor, by applying the rules of surveying, can locate the land, ... and the deed will be sustained if it is possible from the whole description to ascertain and identify the land intended to be conveyed.'" *Id.* (citing to *Campbell v. Carruth*, 13 So. 432, 433 (1893).

19.    "A deed containing a legal description which is so vague and indefinite that a surveyor would not be able to locate the described land is a nullity." *Id.* (citing to *Hoodless v. Jernigan*, 35 So. 656, 660 (1903).

20.    In the instant matter, the property description within the Trustee's deed

{00175155.DOCX; 1 }

quitclaiming the bankruptcy estate's interest to 72 PARTNERS contains the call "thence along said South Right-of-Way of State Road 72, Southwesterly along a curve to the right 400.45 feet to the West line of said Section 2." The curve description provides only the arc length, but fails to provide the central angle (delta), radius, or long chord length or bearing, and is therefore so vague and indefinite that a surveyor would not be able to locate the land described.

21.     Furthermore, the October 8, 2012 Esber Affidavit states that "the legal description attached to the mortgage as Exhibit "A" recorded in the official records of Sarasota County, Instrument # 2010072083 . . . is defective; . . . does not definitively describe the property of [Daughtrey, and] does not encompass the property of [Daughtrey]" (Exhibit D).

22.     As the legal description of the Property conveyed by the Trustee's quitclaim deed is identical to that contained within the mortgage referred by the Esber Affidavit, and fails to provide the delta, radius, or long chord length or bearing, it is not sufficiently definite and certain to permit the land to be identified."

23.     Therefore, under the reasoning of *Mitchell*, "the deed . . . is a nullity," and therefore cannot be used to award summary judgment quieting title to 72 Partners. *Mitchell*, 467 So. 2d at 368.

## CONCLUSION

For any and all reasons set forth hereinabove, summary judgment as to 72 PARTNERS' quiet title action must be denied, as genuine issues of material fact remain regarding the validity of the Warranty Deed by which GILBERTI took title to the Gilberti Ranch, the bankruptcy Trustee's failure to seek avoidance of GILBERTI's then unperfected interest, the bankruptcy Trustee's grant of the bankruptcy estate's interest in the Property via quitclaim deed, whether 72

{00175155.DOCX; 1 }

Sarasota Circuit Court Case # 16-000205 CA  NC
LandTech Design Group, Inc. vs. 72 Partners, LLC
Defendant Gilberti's Memorandum in Opposition to Summary Judgment
Page 11 of 12

PARTNERS took title to the Property subject to Gilberti's prior recorded interest in the Property,

and whether the Trustee's quitclaim deed described the Property with sufficient certainty to

convey any interest whatsoever to 72 PARTNERS.

**WHEREFORE,** Defendant JOSEPH D. GILBERTI, JR. respectfully requests that this

Honorable Court enter an Order denying Plaintiff's Motion for Partial Summary Judgment as to

the quiet title count in its Complaint.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished

via ☐ U.S. Mail ☑ e-mail ☐ facsimile ☐ hand delivery this *31st* day of <u>August, 2016</u> to:

| | |
|---|---|
| Ryan L. Snyder, Esq. | Paul Bennett Seusy, Esq |
| FBN 010849 | FBN 0690252 |
| **Snyder Law Group, P.A.** | **PAUL BENNETT SEUSY PA** |
| *Counsel for 72 Partners* | *Counsel for Defendants Robert J. Flint and* |
| 11031 Gatewood Drive | *Flint Properties II, LLC* |
| Bradenton, FL 34211 | 203 West Oak Street |
| 941-747-3456 | Arcadia    FL    34266 |
| 941-747-6789 Fax | 863-491-7285 Office |
| Ryan@SnyderLawGroup.com | 888-430-5940 Facsimile |
| Lexy@SnyderLawGroup.com | Paul@PaulSeusy.com |
| | AMD@PaulSeusy.com |

<u>s/ *Bradley R. Weiss*</u>
Bradley R. Weiss, Esq., B.C.S.
Florida Bar No.: 0567469
Brad@BMWlawyers.net
Mark S. Mucci, Esq.
Florida Bar No.: 798622
MSM@BMWlawyers.net
**BENSON, MUCCI & WEISS, P.L.**
 *Counsel for Joseph Gilberti*
5561 North University Drive
Suite 102

{00175155.DOCX; 1 }

Sarasota Circuit Court Case # 16-000205 CA  NC
LandTech Design Group, Inc. vs. 72 Partners, LLC
Defendant Gilberti's Memorandum in Opposition to Summary Judgment
Page 12 of 12

Coral Springs    FL   33067
954-323-1023
954-323-1013 Facsimile

{00175155.DOCX; 1 }

**THIS INSTRUMENT PREPARED BY**
Joseph D. Gilberti, Jr., President
LandTech Design Group, Inc.
~~3148 Beaver Pond Trail~~ 385 Denver Ave
~~Valrico, Florida 33596~~ Ft Myers, FL 33931
~~(813) 470-6000~~ 813-482-8512

**Property Appraisers Tax Folio Numbers:**
1009-00-1000 and 1011-00-1010

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2014007904   3 PG(S)
June 18, 2014   12:11:17 PM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FL

Doc Stamp-Deed: $210.00



**WARRANTY DEED**

THIS INDENTURE, made this 26ᵗʰ day of July, A.D. 2013 between Cecil Daughtrey, Jr. joined by his spouse Patricia Ann Daughtrey, whose address is 9438 Daughtrey Road, Sidell, Florida 34266, grantor*, and Joseph D. Gilberti, Jr. whose address is 3148 Beaver Pond Trail, Valrico, Florida 33596, grantee*

*"Grantor" and "Grantee" are used for singular and plural, as context requires.

WITNESSETH that said grantor, for the consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations to said grantor I hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Sarasota County, Florida, to wit:

> All that part of Section 1 lying North of State Road No. 72 and all that part
> of the East 1675.00 feet of Section 2 lying North of State Road No. 72 and
> the North 2068.04 feet of the West 924.27 feet of the East 2,599.27 feet
> of said Section 2, all in Township 38 South, Range 22 East, Sarasota County,
> Florida.
>
> Subject to reservations, restrictions and easements of record (360 +/- Acres)

TOGETHER WITH: All tenements, hereditaments, and appurtenances thereto belonging or in anywise appertaining, with all oil, gas and mineral rights held by grantor and by Predecessors in title.

THE ABOVE-DESCRIBED REAL PROPERTY IS NOT THE HOMESTEAD OF THE GRANTOR

And the said grantor of the first part does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever.

**EXHIBIT ___A___**


**EXHIBIT A**

IN WITNESS WHEREOF, grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

_Cas Musselwhite_
Signature of first witness to both

_CARL Musselwhite_
Printed name of first witness

_Cecil E. Daughtrey Jr._
Cecil Daughtrey, Jr.

_Jonathan Forman_
Signature of second witness to both

_Jonathan Forman_
Printed name of second witness

_Patricia A. Daughtrey_
Patricia Ann Daughtrey

STATE OF FLORIDA

COUNTY OF DESOTO

The foregoing instrument was acknowledged before me this 26th day of July, 2013, by Cecil Daughtrey, Jr. joined by his spouse Patricia Ann Daughtrey, husband and wife, who are each [✓] personally known to me or who have each produced [ ] a Florida driver's license as identification, and who did/did not take an oath.

Sign _Bobbi Jo Forman_
Notary Public, State of Florida

_Bobbi Jo Forman_
Print Notary Name

My Commission Expires: 9/27/13

_DD 907737_
Commission Number

## SKETCH AND DESCRIPTION

THAT PART OF SECTION 1, TOWNSHIP 38 SOUTH, RANGE 22 EAST, LYING NORTH OF STATE ROAD 72, CONTAINING 208.5 ACRES.

ALSO THAT PART OF THE EAST 1675 FEET OF SECTION 2, TOWNSHIP 38 SOUTH, RANGE 22 EAST, LYING NORTH OF STATE ROAD 72, AND THE NORTH 2068.04 FEET OF THE WEST 924.27 FEET OF THE EAST 2599.27 FEET OF SAID SECTION 2, TOWNSHIP 38, RANGE 22 EAST, CONTAINING 157 ACRES, MORE OR LESS.



### CERTIFICATION

I HEREBY CERTIFY THAT THIS SKETCH OF DESCRIPTION MEETS THE MINIMUM TECHNICAL STANDARDS AS SET FORTH BY THE FLORIDA BOARD OF LAND SURVEYORS IN CHAPTER 61G17-6, FLORIDA ADMINISTRATIVE CODE, PURSUANT TO SECTION 472.027, FLORIDA STATUTES.

ESBER & ASSOCIATES, INC.
CERTIFICATE OF AUTHORIZATION NO. LB 6854

BY: ALEX S ESBER
PROFESSIONAL SURVEYOR
FLORIDA CERTIFICATE 5499

### SURVEYORS NOTE

1. THIS DRAWING IS A DESCRIPTION SKETCH ONLY AND DOES NOT REPRESENT A FIELD SURVEY OF PARCEL DESCRIBED. INFORMATION SHOWN HEREON WAS TAKEN FROM PUBLIC RECORDS.

2. THE AREAS OF THE TRACTS SHOWN HEREON ARE APPROXIMATED SINCE THE INFORMATION FROM SARASOTA COUNTY GIS SITE AND HAVE NOT BEEN VERIFIED IN FIELD SURVEY.

| PROPERTY NORTH OF SR 72 SECTIONS 1 & 2 TWP. 38 S., RNG. 22 E. | SKETCH AND DESCRIPTION Prairie Ranch PT2014 | ESBER & ASSOCIATES Professional Surveyors |
| --- | --- | --- |
| | | 4570 Myakka Road · Sarasota, FL 34240 (941)378-8931 · Fax (941)122-9056 |

EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

In re:

CECIL DAUGHTREY, JR. and                    Case No. 9:13-bk-14831-FMD
PATRICIA A. DAUGHTREY,                       Chapter 7

     Debtors.
_____/

ORDER GRANTING CHAPTER 7 TRUSTEE'S AMENDED
MOTION AND NOTICE OF PROPOSED COMPROMISE OF
CONTROVERSY BETWEEN TRUSTEE AND 72 PARTNERS, LLC
(Doc. Nos. 62, 68 & 70)

THIS CASE came on for final hearing on September 25, 2014, to consider: (i) the Amended Notice of Proposed Compromise of Controversy Between Trustee and 72 Partners, LLC (Doc. No. 62) (the "Motion"), filed by Luis Rivera, the Chapter 7 Trustee (the "Trustee") for the estate of Cecil Daughtrey, Jr. and Patricia A. Daughtrey (the "Debtors") on May 29, 2014, as well as the two supplements to the Motion filed by the Trustee (Doc. Nos. 68 & 70); (ii) Joseph Gilberti, President, Land Tech Design Group, Inc. Objection to Trustee Discharge, filed by Joseph Gilberti on June 11, 2014 (Doc. No. 64); and (iii) the Debtors' Objection, filed by the Debtors on June 23, 2014 (Doc. No. 66) (together, the "Objections"). The Court, having reviewed the Motion, together with the supplements, the Objections and the record, heard the argument of counsel and being otherwise duly advised in the premises, and for the reasons stated orally in open court that shall constitute the findings of the Court, finds that the Motion is in the best interest of the creditors and the estate and finds that it is appropriate to enter an order granting the Motion and approving the compromise and sale. Accordingly, it is

ORDERED as follows:

EXHIBIT ___B___

1

EXHIBIT B

1.      The Motion, as supplemented (Doc. Nos. 62, 68 & 70), is granted and the compromise is approved as set forth herein.

2.      The Objections (Doc. No. 64 and 66) are overruled.

3.      The Trustee and 72 Partners, LLC (the "Creditor") are authorized to effectuate the compromise and sale as set forth in the Motion.

        a.      The Trustee consents to the entry of an order granting final stay relief to the Creditor to pursue all remedies necessary in the state court action with respect to the Remaining Real Property. A separate order consistent with the terms of this order shall be entered by this Court.

        b.      The Trustee specifically waives any and all defenses to the Creditor's state court action with respect to the Remaining Real Property[1], as fully described on Exhibit A attached hereto.

        c.      Specifically, the Creditor releases its lien, as reflected by the entry of the Uniform Final Judgment of Mortgage Foreclosure, Recorded in Official Records, Instrument #2013040463, beginning at page 6 on October 14, 2013, on the Homestead Acreage, as fully described on Exhibit B attached hereto. The legal description of the Homestead Acreage specifically includes that certain well identified by Southwest Florida Water Management District as "DID #2, location latitude/longitude 271222.71/820420.00, section/township/range 01/38/22."

        d.      The Creditor shall have the first right of refusal to purchase any of the Homestead Acreage.

        e.      The Creditor shall pay the sum of $300,000.00 to the Trustee in consideration of the waiver of any and all defenses to the Creditor's foreclosure of the

---

[1] All capitalized terms herein shall have the meaning assigned to them in the Motion.

2

Remaining Real Property, the consent to final stay relief, and the execution of a Trustee's Deed of the Remaining Real Property.

       f.     The Trustee shall execute a Trustee's Deed conveying the Remaining Real Property, "as is" with no warranties of any kind.

       g.     The Debtors retain their ownership in the Homestead Property free and clear of claims of the Creditor and the Trustee.

4.     Payment of the sum referenced in 3.e. above shall be made forthwith.

5.     The Court shall retain jurisdiction to enforce the terms of the Motion.

6.     The Order shall be recorded in the Official Record Books of Sarasota County, Florida.

7.     The Creditor shall be provided the protections as a purchaser pursuant to 11 U.S.C. § 363.

Done and Ordered in Tampa, Florida on ___October 7_____, 2014.


_Caryl E. Delano_
_____
**CARYL E. DELANO**
**U.S. Bankruptcy Judge**


Attorney Lara R. Fernandez is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of this order.

3

**Exhibit A**
**Remaining Real Property**

All that part of Section 1, Township 38 South, Range 22 East, lying North of State Road 72, All Section 2, Township 38 South, Range 22 East, LESS right of way for State Road 72, All Section 11, Township 38 South, Range 22 East, The North 1/2 and the West 1/4 of the South 1/2 of Section 14, Township 38 South, Range 22 East, All of Section 15, Township 38 South, Range 22 East, LESS railroad right of way, The West 1/2 of Section 16, Township 38 South, Range 22 East, LESS a parcel of land in Sections 2, 11, 14 and 15, lying within the following described parcel:  Begin at the NW corner of said Section 11; thence South 01 degrees 59'53" West, 5340.95 feet to the SW corner of said Section 11, thence North 88 degrees 22'46" West, 5377.94 feet to the NW corner of said Section 15; thence South 02 degrees 00'10" West, 1320 feet; thence South 88 degrees 22'46" East, 6698.08 feet; thence North 01 degrees 59'53" East, 7240.95 feet to the South Right-of-Way line of State Road 72; thence South 66 degrees 13'13" West, 1042.16 feet along said South Right-of-Way of State Road 72; thence along said South Right-of-Way of State Road 72, Southwesterly along a curve to the right 400.45 feet to the West line of said Section 2; thence South 02 degrees 14'29" West, 18.87 feet to the Point of Beginning, LESS Oil and Mineral Right, all lying and being in Sarasota County, Florida

LESS AND EXCEPT

Commence at the intersection of the East section line of Section 2, Township 38 South, Range 22 East, Sarasota County, Florida and the North right-of-way line of SR 72.  Then southwesterly along north right-of-way line of SR 72 a distance of 1,870 feet more or less to the point of beginning of the property.  This point would be 1,752 feet westerly as measured perpendicular from the east line of said Section 2, Township 38 South, and Range 22 East.  Then continue southwesterly along north right-of-way SR 72 for 498 feet; thence northerly parallel to the east section line of Section 2, Township 38 South, Range 22 East a distance of 916 feet.  Thence westerly and parallel to the north section line of Section 2, Township 38 South, Range 22 East a distance of 1,527 feet; Thence northerly 2,717 feet more or less parallel to the East section line of Section 2, Township 38 South, Range 22 East to the north section line of Section 2, Township 38 South, Range 22 East; Thence east along the north section line of Section 2, Township 38 South, Range 22 East a distance of 3,814 feet more or less to the northeast corner of said Section 2, Township 38 South, Range 22 East; Thence continue along the north line of Section 1, Township 38 South, Range 22 East a distance of 90 feet; Thence southerly parallel to the west section line of Section 1, Township 38 South, Range 22 East a distance of 603 feet; Thence westerly parallel to the north section line of Section 1, Township 38 South, Range 22 East a distance of 90 feet to the west section line of Section 1, Township 38 South, Range 22 East; Thence westerly parallel to the north section line of Section 2, Township 38 South, Range 22 East a distance of 1,752 feet; Thence southerly parallel to the east section line of Section 2, Township 38 South, Range 22 East a distance of 2,826 feet more or less to the point of beginning.

**EXHIBIT B**
**HOMESTEAD ACREAGE**

Commence at the intersection of the East section line of Section 2, Township 38 South, Range 22 East, Sarasota County, Florida and the North right-of-way line of SR 72. Then southwesterly along north right-of-way line of SR 72 a distance of 1,870 feet more or less to the point of beginning of the property. This point would be 1,752 feet westerly as measured perpendicular from the east line of said Section 2, Township 38 South, and Range 22 East. Then continue southwesterly along north right-of-way SR 72 for 498 feet; thence northerly parallel to the east section line of Section 2, Township 38 South, Range 22 East a distance of 916 feet. Thence westerly and parallel to the north section line of Section 2, Township 38 South, Range 22 East a distance of 1,527 feet; Thence northerly 2,717 feet more or less parallel to the East section line of Section 2, Township 38 South, Range 22 East to the north section line of Section 2, Township 38 South, Range 22 East; Thence east along the north section line of Section 2, Township 38 South, Range 22 East a distance of 3,814 feet more or less to the northeast corner of said Section 2, Township 38 South, Range 22 East; Thence continue along the north line of Section 1, Township 38 South, Range 22 East a distance of 90 feet; Thence southerly parallel to the west section line of Section 1, Township 38 South, Range 22 East a distance of 603 feet; Thence westerly parallel to the north section line of Section 1, Township 38 South, Range 22 East a distance of 90 feet to the west section line of Section 1, Township 38 South, Range 22 East; Thence westerly parallel to the north section line of Section 2, Township 38 South, Range 22 East a distance of 1,752 feet; Thence southerly parallel to the east section line of Section 2, Township 38 South, Range 22 East a distance of 2,826 feet more or less to the point of beginning.

Including that certain well identified by Southwest Florida Water Management District as DID #2, location latitude/longitude 271222.71/820420.00, section/township/range 01/38/22.

**AFTER RECORDING RETURN TO:**

Lara R. Fernandez
Trenam Kemker
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33682



RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2014030082  2 PG(S)
October 31, 2014  01:56:27 PM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FL

Doc Stamp-Deed: $10,003.30

_____[Space Above This Line for Recording Data]_____

## TRUSTEE'S DEED

THIS TRUSTEE'S DEED is made and executed this _9th_ day of October, 2014, by LUIS E. RIVERA II, as duly appointed Chapter 7 Trustee in bankruptcy for the estate of Cecil Daughtrey, Jr., and Patricia A. Daughtrey ("Grantor"), pursuant to an Order Granting Chapter 7 Trustee's Amended Motion and Notice of Proposed Compromise of Controversy Between Trustee and 72 Partners, LLC (Doc. No. 97) (the "Order"), entered in Case No. 9:13-bk-14831-FMD, pending before the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court"), whose mailing address is P.O. Box 280, Ft. Myers, FL 33902, in favor of 72 PARTNERS, LLC, a Florida limited liability company (the "Grantee"), whose address is 11031 Gatewood Drive Bradenton, FL 34211.

GRANTOR, FOR AND IN CONSIDERATION of Ten Dollars and No/100 ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby grant, bargain, sell, alienate, remise, release, convey and quitclaim to Grantee and its successors and assigns, the estate's interest in the real property as more particularly described in Exhibit "A" attached hereto (the "Real Property").

TOGETHER with all improvements of any kind or nature located on, in under or along the Real Property and all tenements, hereditaments and appurtenances, with every privilege, right, title, interest and estate, reversion, remainder and easement belonging or in any way appertaining to the Real Property.

TO HAVE AND TO HOLD the same in fee simple forever, this Deed is executed and given pursuant to the Order. This Deed is executed only as a quit-claim deed as to the bankruptcy estate's interest in the Real Property conveyed herein. The Grantor makes no representations or warranties, express, implied or otherwise, regarding the real property and, except as provided in the Order, the sale of the Real Property is "as is, where is."

Grantor and Grantee specifically intend that there shall not be any merger of the lien of the mortgage dated June 8, 2010 and recorded June 14, 2010 in Official Records Instrument Number 2010072083, of the Public Records of Sarasota County, Florida ("Mortgage"), or any other liens in favor of Grantee with the fee simple title or any other interest of Grantee in and to the Real Property under any circumstances connected with this conveyance.

1

EXHIBIT _____C_____

3PGS

## EXHIBIT C

Grantor and Grantee expressly provide that the interest of Grantee in and to the lien of the Mortgage and the title or other interest of the Grantee in and to the Real Property shall at all times remain separate and distinct. No merger of title shall be deemed to have been effected or created hereby. Any and all rights of Grantee to exercise its remedy of foreclosure of the lien of the Mortgage are expressly preserved hereby. The priority of the lien of the Mortgage is intended to be, and shall remain in full force and effect, and nothing herein or in any instruments executed in connection herewith shall be construed to subordinate the priority of the lien of the Mortgage to any other liens or encumbrances whatsoever.

IN WITNESS WHEREOF, Grantor has caused this Trustee's Deed to be executed as of the date and year first above written.

Signed, sealed and delivered
in the presence of :

[Print Name]: _J.D. Payne_

[Print Name]: _LINDA SIMPSON_

GRANTOR

LUIS E. RIVERA II, only as Chapter
7 Trustee for the Bankruptcy estates of
Cecil Daughtrey, Jr., and Patricia A.
Daughtrey
(Case No. 9:13-bk-14831-FMD)

STATE OF FLORIDA          )
COUNTY OF LEE             )

The foregoing instrument was acknowledged before me this __7th__ day of October, 2014, by Luis E. Rivera II, as Chapter 7 Trustee for the bankruptcy Estates of Cecil Daughtrey, Jr., and Patricia A. Daughtrey, Case No. 9:13-bk-14831-FMD, who is personally known to me.

(AFFIX NOTARY SEAL)

Name: _Jodi Payne_
Notary Public
My Commission Expires: 5-15-16

JODI PAYNE
Commission # EE 196935
Expires May 15, 2016

2

**Exhibit A**
**Remaining Real Property**

All that part of Section 1, Township 38 South, Range 22 East, lying North of State Road 72, All Section 2, Township 38 South, Range 22 East, LESS right of way for State Road 72, All Section 11, Township 38 South, Range 22 East, The North 1/2 and the West 1/4 of the South 1/2 of Section 14, Township 38 South, Range 22 East, All of Section 15, Township 38 South, Range 22 East, LESS railroad right of way, The West 1/2 of Section 16, Township 38 South, Range 22 East, LESS a parcel of land in Sections 2, 11, 14 and 15, lying within the following described parcel: Begin at the NW corner of said Section 11; thence South 01 degrees 59'53" West, 5340.95 feet to the SW corner of said Section 11, thence North 88 degrees 22'46" West, 5377.94 feet to the NW corner of said Section 15; thence South 02 degrees 00'10" West, 1320 feet; thence South 88 degrees 22'46" East, 6698.08 feet; thence North 01 degrees 59'53" East, 7240.95 feet to the South Right-of-Way line of State Road 72; thence South 66 degrees 13'13" West, 1042.16 feet along said South Right-of-Way of State Road 72; thence along said South Right-of-Way of State Road 72, Southwesterly along a curve to the right 400.45 feet to the West line of said Section 2; thence South 02 degrees 14'29" West, 18.87 feet to the Point of Beginning, LESS Oil and Mineral Right, all lying and being in Sarasota County, Florida

LESS AND EXCEPT

Commence at the intersection of the East section line of Section 2, Township 38 South, Range 22 East, Sarasota County, Florida and the North right-of-way line of SR.72. Then southwesterly along north right-of-way line of SR 72 a distance of 1,870 feet more or less to the point of beginning of the property. This point would be 1,752 feet westerly as measured perpendicular from the east line of said Section 2, Township 38 South, and Range 22 East. Then continue southwesterly along north right-of-way SR 72 for 498 feet; thence northerly parallel to the east section line of Section 2, Township 38 South, Range 22 East a distance of 916 feet. Thence westerly and parallel to the north section line of Section 2, Township 38 South, Range 22 East a distance of 1,527 feet; Thence northerly 2,717 feet more or less parallel to the East section line of Section 2, Township 38 South, Range 22 East to the north section line of Section 2, Township 38 South, Range 22 East; Thence east along the north section line of Section 2, Township 38 South, Range 22 East a distance of 3,814 feet more or less to the northeast corner of said Section 2, Township 38 South, Range 22 East; Thence continue along the north line of Section 1, Township 38 South, Range 22 East a distance of 90 feet; Thence southerly parallel to the west section line of Section 1, Township 38 South, Range 22 East a distance of 603 feet; Thence westerly parallel to the north section line of Section 1, Township 38 South, Range 22 East a distance of 90 feet to the west section line of Section 1, Township 38 South, Range 22 East; Thence westerly parallel to the north section line of Section 2, Township 38 South, Range 22 East a distance of 1,752 feet; Thence southerly parallel to the east section line of Section 2, Township 38 South, Range 22 East a distance of 2,826 feet more or less to the point of beginning.

Prepared by and return to :
**D. Brian Kuehner**
D. Brian Kuehner, P.A.
4921 Southfork Drive, Ste. 4
Lakeland, FL 33813-2078
(863)646-5728
File No.: 10-4761
Will Call No.:

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2010072063 5 PGS
2010 JUN 14 10:54 AM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY,FLORIDA
FMILLER Receipt#1286376

Doc Stamp-Mort:   8,301.65
Intang. Tax:   4,743.68

(Space Above This Line For Recording Data)

# MORTGAGE

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $2,371,840.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCES MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

DATE:  June 08, 2010

MORTGAGOR

2010072063

Cecil Daughtrey Jr. and Patricia A. Daughtrey, husband and wife
9438 Daughtry Rd, Sidell, FL 34266-9603

MORTGAGEE

BSLF HOLDINGS, LLC, a Florida Limited Liability Company
5900 Imperial Lakes Blvd, Mulberry, Florida 33860

AMOUNT OF INITIAL INDEBTEDNESS SECURED HEREBY:

$2,371,840.00

DATE FINAL PAYMENT DUE:

2 years from the date hereof

MAXIMUM PRINCIPAL INDEBTEDNESS, INCLUDING FUTURE ADVANCES, THAT MAY BE SECURED HEREBY:

$4,743,680.00

The terms "Mortgagor" and "Mortgagee", shall include heirs, personal representatives, successors, legal representatives and assigns, and shall denote the singular and/or the plural, and the masculine and/or the feminine and natural and/or artificial persons, whenever and wherever the context so admits or requires.

LEGAL DESCRIPTION:

SEE ATTACHED EXHIBIT 'A'

1.   Mortgage. In consideration of Ten Dollars and other valuable consideration received by Mortgagor (named above), Mortgagor hereby, on the date stated above, mortgages to Mortgagee (named above) the mortgage property described herein for the purposes identified below.

2.   Secured indebtedness; future advances; maximum amount and time.   This mortgage shall secure (a) the initial indebtedness of Mortgagor (and each of them, if more than one) to Mortgagee, as evidenced by a negotiable Promissory Note of even date herewith, executed by Mortgagor and payable to Mortgagee, in the amount specified above, (b) any future advances made by Mortgagee to Mortgagor (or any of them, if more than one), and (c) all other indebtedness of Mortgagor (and each of them, if more than one) to Mortgagee, however and wherever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, contingent, sole, joint or several, due or to become due, or which may be hereafter contracted or acquired, whether arising in the ordinary course of business or otherwise. The total amount of indebtedness secured hereby may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed the maximum principal amount specified above, plus interest thereon, and any disbursements made for the payment of taxes, levies, or insurance on the mortgaged property, and for maintenance, repair, protection, and preservation of the mortgaged property, with interest on such disbursements, all as provided in this mortgage. This mortgage shall not secure any future advances made more than twenty years from the date hereof.

3.   Payment of secured indebtedness.  Mortgagor shall pay all indebtedness and perform all obligations secured hereby promptly when due. However, if any party signing this mortgage has not executed, endorsed, or guaranteed any promissory note or notes secured by this mortgage, then such party shall have no personal liability under or in connection with such promissory note or notes.

4.   Title covenants. Mortgagor covenants that the mortgaged property is free from all encumbrances (other than this mortgage) except as may be specifically stated herein, that lawful seisin of

**EXHIBIT D**

and good right to encumber the mortgaged property are vested in Mortgagor, and that Mortgagor hereby fully warrants the title to the mortgaged property and will defend the same against the lawful claims of all persons whomsoever.

5.    Improvements, fixtures, etc.    This mortgage extends to and shall encumber all buildings, improvements, fixtures or appurtenances now or hereafter erected or existing upon the mortgaged property, including all elevators and all gas, steam, electric, water, cooking, refrigerating, lighting, plumbing, heating, air conditioning, ventilation, and power systems, machines, appliances, fixtures, and appurtenances, even though they be detached or detachable, all of which shall be deemed part of the mortgage property.

6.    Maintenance and repair.    Mortgagor shall permit, commit, or suffer no waste, impairment, or deterioration of the mortgaged property. Mortgagor shall maintain the mortgaged property in good condition and repair. If Mortgagor fails to do so, then Mortgagee, without waiving the option to foreclose, may take some or all measures that Mortgagee reasonably deems necessary or desirable for the maintenance, repair, preservation, or protection of the mortgage property, and any expenses reasonably incurred by Mortgagee in doing so shall become part of the indebtedness secured hereby, and shall, at the option of the Mortgagee, become immediately due and payable, and shall bear interest at the highest lawful rate specified in any note evidencing any indebtedness secured hereby. Mortgagee shall have no obligation to care for or maintain the mortgaged property, or, having taken some measures therefor, to continue the same or take other measures. If the mortgage covers a unit in a condominium or a planned unit development, Mortgagor shall perform all of Mortgagor's obligations under the declaration or covenants creating or governing the condominium or planned unit development, and the bylaws and regulations of the condominium or planned unit development and constituent documents.

7.    Insurance.    To keep and maintain, during the term of the Loan, (I) if required by the Mortgagee, a policy of general public liability insurance affording coverage to the Mortgagee as an additional insured in an amount of $1,000,000.00 per person and $3,000,000.00 in the aggregate for any occurrence; (ii) in the event that improvements requiring a certificate of occupancy in order to be lawfully occupied are either presently located, or contemplated to be constructed, on the Land, then, an "all perils" policy of "extended" or "broad-form" casualty insurance, insuring said improvements against casualty loss in an amount equal to at least one hundred percent of the full replacement cost of the improvements, existing or contemplated to be constructed upon the Land and, in any event, in an amount sufficient to prevent the Mortgagor from becoming a co-insuror with respect to any loss covered by said policy; and (iii) in the event that there are permanent improvements constructed upon the Land which improvements lie in a special flood hazard area designated as such, under the National Flood Insurance Program, then (x) a copy of flood insurance insuring said improvements, and (y) proof of payment of the premium due thereunder. The policies of insurance required to be provided and maintained hereunder shall be issued by a company or companies to be approved by the Mortgagee, and the policy or policies to be held by and payable to the Mortgagee; and in the event any sum of money becomes payable under such policy or policies, the Mortgagee shall have the option to receive and apply the same on account of the indebtedness hereby secured or to permit the Mortgagor to receive and use it, or any party thereof, for other purposes, without thereby waiving or impairing any equity, lien or right under or by virtue of this Mortgage. In the event the Mortgagor shall for any reason fail to keep the said premises so insured, or fail to deliver promptly any of the said policies of insurance to the Mortgagee, or fail promptly to pay fully any premium therefore, the Mortgagee may place and pay for such insurance or any part thereof without waiving or affecting the option to foreclose or any right hereunder, and each and every such payment so made by the Mortgagee shall be deemed to have been added to the outstanding principal balance then due under the Note, shall bear interest from the date thereof until paid by Mortgagor at the Default Rate and shall be secured by the lien of this Mortgage. In the event that the Mortgagor and Mortgagee have entered into a Loan Agreement or Construction Agreement in connection with the Loan from Mortgagee to Mortgagor evidenced by the Note, the terms and conditions of any such Loan Agreement relating to insurance shall be deemed to supplement the provisions set forth herein.

8.    Rents and Profits.    This mortgage shall extend to and encumber all rents, issues, profits, proceeds and revenues derived from the mortgaged property, but, Mortgagor may receive the same while this mortgage is not in default.

9.    Receiver.    If this mortgage falls into default, Mortgagee shall be entitled to the appointment of a receiver to take charge of the mortgage property, and the rents, issues, profits, proceeds and revenues arising therefrom, and hold the same subject to the direction of a court of competent jurisdiction, regardless of the solvency of Mortgagor or the adequacy of the security.

10.    Taxes.    Notwithstanding any other provision of this Mortgage, if the Mortgagor shall default in the payment of any tax, lien, assessment or charge levied or assessed against the Mortgage Property or premises, or if the same or any part thereof are or become delinquent, then Mortgagee, at its option, may at any time pay the same, together with any interest thereon and any accrued delinquency, redemption or other charges, fees, costs or expenses related thereto, and all payments made or costs incurred by the Mortgagee in connection therewith, shall be secured by lien of this Mortgage and shall be, without demand, immediately repaid by the Mortgagor to the Mortgagee with interest thereon from the date of such payment at the maximum rate provided by law, except that Mortgagee may in its sole discretion permit Mortgagor to make such repayment in monthly installments of principal, together with said interest thereon, over a limited term of months established by Mortgagee (which monthly installments, if established by Mortgagee, may be prepaid by Mortgagor), and except that Mortgagee may in its sole discretion set the interest due on such payment at a rate less than the maximum rate provided by law. Mortgagee shall have no obligation on its part to determine that validity or necessity of any payment of taxes, etc., described herein and any such payment shall not waive or affect any option, remedy, lien equity or right of Mortgagee under or by virtue of this Mortgage, to include, without limitation, any right or option to foreclose same. Nothing herein shall be construed as requiring Mortgagee to advance or expend monies for any of the purposes mentioned in this paragraph.

11. <u>Inspection</u>. Mortgagee and Mortgagee's representatives may enter upon the mortgaged property for inspection at all reasonable time and in a reasonable manner, both before and after default.

12. <u>Eminent domain</u>. This mortgage extends to and shall encumber any judgements, awards, damages, and settlements hereafter rendered or paid and resulting from condemnation proceedings with respect to the mortgaged property or the taking of the mortgaged property or any part thereof under the power of eminent domain, and Mortgagee may require that any sums payable to the Mortgagor and arising out of the power of the eminent domain with respect to the mortgaged property shall be applied to the indebtedness secured hereby.

13. <u>Enforcement and collection expenses</u>. Mortgagor shall pay all expenses, including attorney's fees, reasonable incurred by Mortgagee with respect to collection of the indebtedness secured hereby or enforcement of Mortgagee's rights hereunder (including foreclosure or other litigation expenses and also including such costs and attorney's fees as may be incurred on appeal), arising out of any default by Mortgagor, and the amount thereof shall become part of the indebtedness secured hereby, and shall, at the option of the Mortgagee, become immediately due and payable, and shall bear interest at the highest lawful rate specified in any note evidencing any indebtedness secured hereby.

14. <u>Acceleration upon default</u>. If Mortgagor fails to pay any indebtedness secured hereby promptly when due (or within such grace period as may be provided in the note or notes evidencing the indebtedness), or if Mortgagor materially breaches any other covenant herein or otherwise materially defaults hereunder, then Mortgagee may declare all indebtedness secured hereby to be accelerated and immediately due and payable. Mortgagee's failure to declare an acceleration shall not impair the right to do so in the event of a continuing or subsequent breach or default.

15. <u>Acceleration upon transfer of mortgaged property</u>. If all or any part of the mortgaged property or an interest therein is sold or transferred by Mortgagor in any manner whatsoever without Mortgagee's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate, to this mortgage except a wrap-around mortgage; (b) the creation of a purchase money security interest for household appliance; (c) a transfer by devise, descent, or by operation of law upon the death of a joint tenant; or pursuant to a court order entered in proceedings for the dissolution of the marriage of tenants by the entirety, directing that the mortgaged property be transferred to one of the parties thereto; or (d) the grant of any leasehold interest of three (3) years or less not containing an option to purchase, Mortgagee may, at Mortgagee's option, declare all of the sums secured by this Mortgage to be accelerated and immediately due and payable. Mortgagee shall have waived such option to accelerate if, and only if, prior to the sale or transfer, Mortgagee and the person or persons to whom the property is to be sold or transferred reach agreement in writing that (i) the credit and such other matters as may be required by Mortgagee (including, without limitation, Mortgagee's approval of the skill, knowledge, ability, business performance, and experience) of such person or persons is satisfactory to Mortgagee, and (ii) the interest payable on the sum secured by this mortgage shall be at such rate as Mortgage in its sole discretion shall determine; and (iii) Mortgagee shall have received payment of such amount as an assumption fee as Mortgagee in its sole discretion shall determine. In determining such rate or payment, or both, Mortgagee may, but is not required to, consider the Mortgagee's costs actually incurred, the credit worthiness of the transferee, the protection of the Mortgagee's security, the profitability of Mortgagee's loan portfolio, or any one or more of the foregoing. Mortgagee's right to accelerate this mortgage upon any sale or transfer of the mortgaged property or any interest therein is included in this mortgage as a material inducement to Mortgagee's making the loan or loans secured hereby and has been relied upon by Mortgagee in establishing the terms and conditions thereof; accordingly, the limitations contained in this paragraph shall be strictly construed against the Mortgagor and Mortgagor's successor(s) in interest and in favor of Mortgagee. If Mortgagee has waived the option to accelerate as provided in this paragraph, and if Mortgagor's successor(s) in interest and in favor of Mortgagee. If Mortgagee has waived the option to accelerate as provided in this paragraph, and if Mortgagor's successor(s) in interest executes a written assumption agreement, in form and substance satisfactory to Mortgagee, undertaking to pay all indebtedness secured hereby and to perform all obligations set forth herein, and if Mortgagor's successor(s) in interest execute such other agreements as Mortgagee may reasonably require. Mortgagee shall release Mortgagor from all obligations under this mortgage and note. If Mortgagee has not waived its option to accelerate as provided in this paragraph, Mortgagee may deal with the successor or successors in interest without any discharging or reducing Mortgagor's liability for Mortgagor's obligations secured hereby.

16. <u>No waiver</u>. No delay by Mortgagee in exercising any option, right, or remedy hereunder or otherwise afforded by law shall waive or preclude the exercise thereof during the continuance of any breach or default hereunder. No waiver by Mortgagee of any provision, breach, or default shall be a waiver of any other provision or a consent to any subsequent breach or default.

17. <u>Default under other mortgages</u>. If the mortgaged property or any part thereof is now or hereafter encumbered by other mortgage held by Mortgagee, then, at the option of Mortgagee, any default hereunder shall also be a default under each and all of such other mortgages, and any default under any of such other mortgages shall also, at Mortgagee's option, be a default hereunder. Any default by Mortgagor in any term, covenant, or provision of any other mortgage held by any other party that may now or hereafter encumber the mortgaged property, or any part thereof, shall, at the option of Mortgagee, also constitute a default hereunder.

18. <u>Extensions, leniencies, and releases</u>. Mortgagee may grant extensions of time for payment and other leniencies with respect to any indebtedness secured hereby, and may waive or fail to enforce any of Mortgagee's rights hereunder, and may release a portion or portions of the mortgaged property from the lien hereof, without releasing or diminishing the obligation or liability of any person constituting Mortgagor, or any guarantor or endorser.

19. <u>Subrogation</u>. Mortgagee shall be subrogated to the lien (notwithstanding its release of

record) of any vendor, mortgagee, or other lienholder paid or discharged by the proceeds of any loan or advance made by Mortgagee to Mortgagor and secured hereby.

20.    Release or satisfaction. Whenever there is no outstanding obligation secured hereby and no commitment to make advances, Mortgagee shall on written demand by Mortgagor give a release hereof, in recordable form.

21.    General Provisions. The singular shall include the plural and any gender shall be applicable to all genders when the context permits or implies. If more than one person constitutes the Mortgagor, their covenants and obligations hereunder shall be joint and several. Mortgagee's rights expressed herein are in addition to and cumulative of any other rights and remedies provided by law. When the context permits, the terms "Mortgagor" and "Mortgagee" shall extend to and include their respective heirs, legal representatives, successors, and assigns. Any agreement hereafter made by Mortgagor and Mortgagee pursuant to this mortgage shall be superior to the rights of the holder of any intervening lien or encumbrance.

And the said Mortgagor does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever.

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $2,371,840.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCES MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

Executed at Polk County Florida on the date written above.

Signed, sealed and delivered
in the presence of:

Print Name:      D. Brian Kuehner

Print Name:  MARK MIZELL

Cecil Daughtrey, Jr.

Print Name:      D. Brian Kuehner

Print Name:  MARK MIZELL

Patricia A. Daughtrey

State of Florida
County of Polk

The foregoing instrument was acknowledged before me this  8th  day of June, 2010 by  Cecil Daughtrey Jr. and Patricia A. Daughtrey, husband and wife,  who is/are personally known to me or who has provided  drivers license  as identification.

Notary Seal

Notary Public      DAWN M. WARD

**EXHIBIT "A"**

All that part of Section 1, Township 38 South, Range 22 East, lying North of State Road 72, All Section 2, Township 38 South, Range 22 East, LESS right of way for State Road 72, All Section 11, Township 38 South, Range 22 East, The North 1/2 and The West 1/4 of the South 1/2 of Section 14, Township 38 South, Range 22 East, All of Section 15, Township 38 South, Range 22 East, LESS railroad right of way, The West 1/2 of Section 16, Township 38 South, Range 22 East, LESS a parcel of land in Sections 2, 11, 14 and 15, lying within the following described parcel: Begin at the NW corner of said Section 11; thence South 01 degrees 59'53" West, 5340.95 feet to the SW corner of said Section 11; thence North 88 degrees 22'46" West, 5377.94 feet to the NW corner of said Section 15; thence South 02 degrees 00'10" West, 1320 feet; thence South 88 degrees 22'46" East, 6698.08 feet; thence North 01 degrees 59'53" East, 7240.95 feet to the South Right-of-Way line of State Road 72; thence South 66 degrees 13'13" West, 1042.16 feet along said South Right-of-Way of State Road 72; thence along said South Right-of-Way of State Road 72, Southwesterly along a curve to the right 400.45 feet to the West line of said Section 2; thence South 02 degrees 14'29" West, 18.87 feet to the Point of Beginning, LESS Oil and Mineral Right, all lying and being in Sarasota County, Florida.

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA
CIVIL DIVISION

72 PARTNERS, LLC, a Florida limited
liability company,

      Plaintiff,

v.                            CASE NO.  2011 CA 004209 NC

CECIL DAUGHTREY JR. and PATRICIA A.
DAUGHTREY, individually and as husband
and wife, and RICHARD O. BECKER, an individual,

      Defendants.
_____/

### AFFIDAVIT OF ALEX S. ESBER, PLS

STATE OF FLORIDA

COUNTY OF LEE

BEFORE ME, the undersigned authority, personally appeared, ALEX S. ESBER, who was sworn and says, under penalty of perjury that the following allegations are true and correct and made on personal knowledge and that the Affiant is over the age of eighteen (18) and is competent to testify to the matters stated:

1.  Affiant's name is Alex S. Esber.
2.  Affiant's address is 209 Fred Avenue North, Lehigh Acres, Florida 33971.
3.  Affiant is a Professional Surveyor and Mapper, State of Florida License No. 4349.
4.  Affiant has been a licensed professional surveyor and mapper in the State of Florida for over 25 years.
5.  Affiant's responsibilities include preparing, reviewing, tracing, and plotting legal descriptions and ownerships of property, and property rights in addition to preparing and certifying surveys of the same.
6.  Affiant was engaged by Cecil Daughtrey to review the legal description language attached to the mortgage as Exhibit "A," recorded in the official records of Sarasota

Page 1 of 2

EXHIBIT B

**EXHIBIT E**

Instrument # 2010072083 and said legal description attached hereto as Exhibit "A" relative to the property ownership of Cecil Daughtrey.

7. Affiant certifies that he did review the legal description language attached to the mortgage as Exhibit "A," recorded in the official records of Sarasota County, Instrument # 2010072083 and said legal description attached hereto as Exhibit "A"; and, (a) said legal description is defective; (b) said legal description does not definitively describe the property of Cecil Daughtrey, Jr. and Patricia A. Daughtrey; (c) said legal description does not encompass the property of Cecil Daughtrey, Jr. and Patricia A. Daughtrey.

FURTHER AFFIANT SAYETH NAUGHT.

Date: Oct. 08, 2012

Alex S. Esber, PLS

State of Florida
County of Lee

Sworn to and subscribed before me this 8th day of October, 2012, by Alex S. Esber, who did take an oath and who is personally known to me or he/she produced _____ N/A _____ for identification.

NOTARY PUBLIC-STATE OF FLORIDA
Debra L. Rost
Commission # DD861370
Expires:  FEB. 15, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

Signature of Notary Public

Debra L. Rost
Print, Type, or stamp Commissioned Name of Notary Public

Page 2 of 2

8/31/2016[BRW- | W:\Wdocs\Clients\00404\15331\00151344.DOCX

IN THE CIRCUIT COURT OF THE 12ᵗʰ JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY, FLORIDA

**CASE #:  16-000205 CA  NC**

72 PARTNERS, LLC, a Florida limited
liability company,

     Plaintiff,

vs.

JOSEPH D. GILBERTI, JR., an individual;
ROBERT J. FLINT, an individual; and
FLINT PROPERTIES II, LLC,

     Defendants.

_____

### Affidavit in Support of Memo in Opposition
### to Plaintiff's Motion for Partial Summary Judgment
### Quieting Title

State of Florida     )
                 )ss:
County of Broward    )

Before me, the undersigned authority, duly authorized to administer oaths and take acknowledgments, personally appeared Joseph D. Gilberti, Jr. who, first being duly sworn, upon oath deposes and says:

1.     My name is Joseph D. Gilberti, Jr. I am over the age of 18. I make this Affidavit of my own personal knowledge.

2.     On July 26, 2013, Cecil Daughtrey Jr. and Patricia A. Daughtrey conveyed to me, via properly executed Warranty Deed, witnessed by Carl Musselwhite and Jonathan Forman and notarized by Bobbi Jo Forman, real property in the Northeast portion of Sarasota County more particularly described as:

{00157825.DOCX; 1 }



Sarasota Circuit Court Case # 16-000205 CA  NC
LandTech Design Group, Inc. vs. 72 Partners, LLC
Defendant Gilberti's Affidavit Opposing Partial Summary Judgment
Page 2 of 3

All that part of Section 1 lying North of State Road No. 72 and all that part of the East 1675.00 feet of Section 2 lying North of State Road No. 72 and the North 2068.04 feet of the West 924.27 feet of the East 2,599.27 feet of said Section 2, all in Township 38 South, Range 22 East, Sarasota County, Florida

3.    On June 10, 2014, I recorded the deed by which I took title to the property described in Paragraph 2 hereinabove in the Official Records of Sarasota County, Florida via Instrument Number 2014067954.

4.    From the date of execution of the Warranty Deed referred to in Paragraph 2, hereinabove, until on or about May 28, 2014, I was confined to my home in pretrial detention on a misdemeanor charge related to water and mineral rights in the property, which is the subject of this quiet title action, where such rights conflicted with local mining compacts represented by the alleged victims of the misdemeanor who were also counsel for the Daughtrey's from the outset of the Foreclosure action brought against them.

5.    Because of such pretrial detention, I was unable to record the Warranty Deed referred to in Paragraph 2, hereinabove until June 10, 2014.

6.    I have read and know the truth of the factual allegations of the Memorandum in Opposition to Plaintiff's Motion for Summary Judgment filed herein and know of my own personal knowledge that the allegations contained therein are true and correct to the best of my knowledge and belief.

7.    If called as a witness, Affiant would testify competently to the matters stated herein.

**Further Affiant Sayeth Naught.**

{00157825.DOCX; 1 }



Sarasota Circuit Court Case # 16-000205 CA  NC
LandTech Design Group, Inc. vs. 72 Partners, LLC
Defendant Gilberti's Affidavit Opposing Partial Summary Judgment
Page 3 of 3

JOSEPH D. GILBERTI, JR.

## Acknowledgment

State of Florida          )
County of Broward      )

On this _____ day of 8/31/2016, before me personally appeared Joseph D. Gilberti,

Jr., who ☐ is personally known to me or who ☑ proved his identity by bearing his

____FL DL_____, who took an oath before me and executed this

instrument in my presence.



Notary Public, State of Florida

CLETUS POSER
Notary Public - State of Florida
Commission # GG 004613
My Comm. Expires Oct 17, 2020
Bonded through National Notary Assn.



Filing # 34705805 E-Filed 11/20/2015 11:32:59 AM

### IN THE COUNTY COURT OF THE TWELFTH JUDICIAL CIRCUIT
### IN AND FOR SARASOTA COUNTY, FLORIDA
### CIVIL DIVISION

72 PARTNERS, LLC,

      Plaintiff,

vs.

CECIL DAUGHTREY AND PATRICIA
DAUGHTREY.,

      Defendants.

)  Case No.: 2011 CA 004209 NC
)
)
)   Hon. Rochelle Curley
)
)   **Hearing: Nov. 23, 2015 @ 10:00 am (30 min)**
)
)
)   **OPPOSITION TO MOTION TO VOID**
)   **TRANSFER OF REAL ESTATE**
)

NOW COMES The Defendants, Cecil and Patricia Daughtrey, and hereby oppose Plaintiffs motion to avoid certain real estate transfers, and further state unto this Honorable Court in support of their opposition:

**RELEVANT FACTS**

On July 26, 2013 the Defendants transferred the relevant portion of property to Joseph Gilberti. Despite the transfer, this matter continued to final judgment of foreclosure on October 13, 2013. The Defendants filed for bankruptcy protection on November 7, 2013.

During the course of the bankruptcy, the Plaintiff, herein, filed for relief from the automatic stay on the property and this matter seeking to reset the foreclosure sale date and finalize this matter. Initially the Court granted relief from the automatic stay, but later re-imposed it at the Chapter 7 Trustee's request.

During the course of the Bankruptcy matter the Trustee and Plaintiff negotiated and resolved the relief from stay via a compromise proposal. The only relevant part of the compromise in this matter is paragraph 3(f) which states that the Plaintiff took the trustee's deed which specifically states "The Trustee shall execute a Trustee's Deed conveying the Remaining Real Property, "as is" with no warranties of any kind."

Page 1 of 4

After the Bankruptcy Court approved the compromise, the Defendant-Debtors appealed the Bankruptcy Court's Order approving the compromise to the Federal District Court for the Middle District of Florida.  While that appeal was pending, the Plaintiffs filed a motion similar to this motion in the Bankruptcy Court. (see attached exhibit "A").  The motion scheduled for hearing before the Bankruptcy Court on February 19, 2015.  At that hearing, the Plaintiff appeared by Counsel and the Chapter 7 Trustee appeared.  The court heard oral arguments, and rather than suffer the collateral affects of an order denying the motion, the Plaintiff's chose to withdraw it in open court. (see attached Exhibit "B").  The Plaintiff then files the substantially same motion before this court eight months later.

**ARGUMENT**

The main argument made by the Plaintiff is that the property was transferred in violation of Federal Bankruptcy Law, and therefore is invalid.   However, the plaintiff failed to provide an accurate factual history.

Florida Statute, section 695.11 contains the following language: "The sequence of such official numbers shall determine the priority of recordation. An instrument bearing the lower number in the then-current series of numbers shall have priority over any instrument bearing a higher number in the same series."  Florida courts over time have described and applied Florida's recording statute in a manner that is consistent with a "notice" type of recording statute. See *Lesnoff v. Becker,* 101 Fla. 716, 135 So. 146, 147 (1931) ( " 'Under our recording statutes, subsequent purchasers, acquiring title without notice of a prior unrecorded deed, mortgage, or transfer of real property, or any interest therein, will be protected against such unrecorded instrument, unless the party claiming thereunder can show that such subsequent purchaser acquired the title with **actual notice** of such unrecorded conveyance or mortgage; and the burden of showing such notice is upon the party claiming under such unrecorded instrument, the

presumption in such case being that such subsequent purchaser acquired his title in good faith and without notice of the prior unrecorded conveyance.' " (Emphasis Added) (quoting *Rambo v. Dickenson*, 92 Fla. 758, 110 So. 352, 353 (1926))); *Morris v. Osteen,* 948 So.2d 821, 826 (Fla. 5th DCA 2007) ("Generally, competing interests in land have priority in the order in which they are created;" "[t]he important caveat to this rule is that those acquiring rights later will have priority if they took without 'notice of the first created rights.' " *F.J. Holmes Equip., Inc. v. Babcock Bldg. Supply, Inc.*, 553 So.2d 748, 750 (Fla. 5th DCA 1989) "The first rule is that competing interests in land have priority in order of their creation in point of time;" "[t]his rule is subject to the important exception created by the recording statute that notice of the first created rights must be available to those later acquiring rights in the same land. . ." *id.*

The Plaintiff, in their motion argue that the transfer of the property interest occurred in violation of the automatic stay, however, that is incorrect. A plain reading of the deed from the Defendants to Mr. Gilberti shows that the property was transferred on July 26, 2013, which precedes the filing of the bankruptcy by more than 90 days. The transfer of ownership was not affected by the Bankruptcy, nor was the transfer set aside by the Chapter 7 Trustee prior to the compromise. This only leaves open the question, did the Plaintiff take a deed, which is "as is" with knowledge of the earlier transfer? The answer is yes, the Plaintiff took the Trustee deed with full knowledge of Mr. Gilberti's ownership interest. The Plaintiff cannot get relief in State Court based upon Bankruptcy Law and argument when it tried and failed to get the same relief in Bankruptcy Court.

**CONCLUSION**

The Plaintiff filed this motion, failed to serve it upon the Defendants, also it appears that the Plaintiff filed for some emergency relief against the Defendants without service, and that

relief was denied. The Plaintiff argues that the Defendant have no standing, but of course they do.  72 Partners looks to the Chapter 7 Trustee as its rock, but the Trustee has no further interest in this case or the property (see attached Exhibit "C"), except if the compromise gets overturned by the 11th Circuit Court or the US Supreme Court.

So why would the Plaintiff go so far to exclude opposing parties from participating in this motion?  Because, 72 Partners knows that they sought this relief once and failed to get it.  The bottom line in this matter is, the Plaintiff claims to own the property by virtue of a deed recorded after Mr. Gilberti's.  Plaintiff cannot argue they took that deed without notice of Mr. Gilberti's interest, and the Plaintiff has failed to plead or support a claim that the July 2013 transfer was not in good faith. The Plaintiff's motion should be denied.

WHEREFORE the Defendants, Cecil and Patricia Daughtrey, respectfully request that the Court deny the motion,  award costs and attorney fees so wrongly incurred by the Defendants herein, and for any other relief that the Court deems equitable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent this 20th Day of November, 2015 via the Courts Electronic Filing system to *Ryan Snyder [ryan@snyderlawgroup.com]*

Respectfully Submitted,
DeCailly Law Group, PA


By: /s/ Paul DeCailly
    Paul DeCailly, 796301
    **Attorney for Defendant**
    PO Box 490
    Indian Rocks Beach, FL 33785
    (727) 824-7709
    pdecailly@dlg4me.com


Page **4** of **4**

Exhibit "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISON

In Re:

CECIL DAUGHTREY JR. and                    Case No.: 9:13-BK-14831-FMD
PATRICIA A. DAUGHTREY.

                                           Chapter: 7

_____/

### CREDITOR'S, 72 PARTNERS, LLC, MOTION TO NULLIFY AND/OR VOID TRANSFER OF REAL PROPERTY

Creditor, 72 PARTNERS, LLC ("Creditor"), by and through its undersigned counsel, in accordance with 11 USC and the applicable Federal Rules of Bankruptcy Procedure, files this Motion to Nullify and/or Void Transfer of Real Property, and states as follows:

1.    On November 7, 2013, Debtors, CECIL DAUGHTREY JR. and PATRICIA A. DAUGHTREY ("Debtors") filed for Chapter 7 bankruptcy protection.    In Schedule A of their petition, Debtors listed the real property ("Property") that was owned by Debtors as of November 7, 2013.

2.    On June 10, 2014, Debtors caused a Warranty Deed to be recorded in Official Records Instrument Number 2014067954, of the Public Records of Sarasota County, Florida.  A copy of the Warranty Deed is attached hereto as Exhibit "A" and is made a part hereof by reference.    The Warranty Deed purportedly transferred a portion of the Property to Creditor, Joseph D. Gilberti, Jr.

3.    On October 7, 2014, this Court entered an Order Granting Chapter 7 Trustee's Amended Motion and Notice of Proposed Compromise between Trustee and 72 Partners, LLC (Document No. 97) ("Order").  The Order permitted the Chapter 7 Trustee to sell the Property, less a portion of the Property as described in the Order, to Creditor.    Following entry of the

Order, the Chapter 7 Trustee sold the Property, less a portion of the Property as described in the Order, to Creditor.

      4.      On or about December 1, 2014, Creditor obtained a title commitment from Fidelity National Title Insurance Company through its issuing agent, Snyder Law Group, P.A., for the portion of the Property it acquired from the Chapter 7 Trustee as referenced in paragraph 3 herein. A copy of the title commitment is attached hereto as Exhibit "B" and is made a part hereof by reference. The title commitment revealed the transfer as referenced in paragraph 2 herein.

      5.      The transfer referenced in paragraph 2 herein has clouded that portion of the Property acquired by Creditor. Moreover, the transfer referenced in paragraph 2 herein has likely clouded that portion of the Property retained by Debtors as referenced in the Order.

      6.      In order to insure title to that portion of the Property acquired by Creditor, Fidelity National Title is requiring Creditor to obtain an order from this Court declaring the Warranty Deed recorded in Official Records Instrument Number 2014067954, of the Public Records of Sarasota County, Florida, invalid and establishing of record that said Warranty Deed is null and void.

      7.      At the time of the transfer referenced in paragraph 2 herein, the Property was vested in the Chapter 7 Trustee. As such, Debtors did not have authority to convey a portion of the Property to Creditor, Joseph D. Gilberti, Jr.

      WHEREFORE, Creditor respectfully requests this Court enter an Order declaring the Warranty Deed recorded in Official Records Instrument Number 2014067954, of the Public Records of Sarasota County, Florida, invalid and establishing of record that said Warranty Deed is null and void, and for any further relief this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via U.S. Mail to Cecil Daughtrey Jr. and Patricia A. Daughtrey, whose address is 9438 Daughtrey Road, Sidell, FL  34266, Joseph D. Gilberti, Jr., whose address is 3148 Beaver Pond Trail, Valrico, FL  33596, Gilberti Water Company, whose address is 3148 Beaver Pond Trail, Valrico, FL  33596, Land Tech Design Group, Inc., whose address is 3148 Beaver Pond Trail, Valrico, FL  33596, and Land Tech Design Group, Inc., whose address is 3905 Halloak Court, Valrico, FL  33596, this 6th day of January, 2015. I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via email to Joseph D. Gilberti, Jr. and Land Tech Design Group, Inc. at gilberti.water.company.fla@gmail.com this 6th day of January, 2015.    I HEREBY CERTIFY that on January 6, 2015, I electronically filed this document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to, Luis E. Rivera, II, Chapter 7 Trustee, Lara Fernandez, Esq., Special Counsel for Chapter 7 Trustee, and Paul DeCailly, Esq., Counsel for Debtors, Cecil Daughtrey Jr. and Patricia A. Daughtrey.

/s/ Ryan L. Snyder
Ryan L. Snyder
Florida Bar No. 0010849
Attorney for Creditor, 72 Partners, LLC
SNYDER LAW GROUP, P.A.
11031 Gatewood Drive
Bradenton, FL  34211
Telephone:  (941) 747-3456
Facsimile:  (941) 747-6789
E-mail:  ryan@snyderlawgroup.com



**THIS INSTRUMENT PREPARED BY**

Joseph D. Gilberti, Jr., President

LandTech Design Group, Inc.

~~3148 Beaver Pond Trail~~ 385 Dewura Ave

~~Valrico, Florida 33596~~ Ft Myers, FL 33931

~~(813) 470-6000~~ P13-482-8512

**Property Appraisers Tax Folio Numbers:**

**1009-00-1000 and 1011-00-1010**

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2014067954  3 PG(S)
June 10, 2014  12:11:17 PM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FL

Doc Stamp-Deed: $910.00

**WARRANTY DEED**



THIS INDENTURE, made this 26th day of July, A.D. 2013 between **Cecil Daughtrey, Jr.**
joined by his spouse **Patricia Ann Daughtrey**, whose address is 9438 Daughtrey Road, Sidell,
Florida 34266, grantor*, and **Joseph D. Gilberti, Jr.** whose address is 3148 Beaver Pond Trail,
Valrico, Florida 33596, grantee*

*"Grantor" and "Grantee" are used for singular and plural, as context requires.

WITNESSETH that said grantor, for the consideration of the sum of Ten Dollars ($10.00)
and other good and valuable considerations to said grantor I hand paid by said grantee, the
receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee,
and grantee's heirs and assigns forever, the following described land, situate, lying and being in
Sarasota County, Florida, to wit:

All that part of Section 1 lying North of State Road No. 72 and all that part
of the East 1675.00 feet of Section 2 lying North of State Road No. 72 and
the North 2068.04 feet of the West 924.27 feet of the East 2,599.27 feet
of said Section 2, all in Township 38 South, Range 22 East, Sarasota County,
Florida.

Subject to reservations, restrictions and easements of record (360 +/- Acres)

TOGETHER WITH: All tenements, hereditaments, and appurtenances thereto belonging
or in anywise appertaining, with all oil, gas and mineral rights held by grantor and by
Predecessors in title.

THE ABOVE-DESCRIBED REAL PROPERTY IS NOT THE HOMESTEAD OF
THE GRANTOR

And the said grantor of the first part does hereby fully warrant the title to said land, and
will defend the same against the lawful claims of all persons whomsoever.

EXHIBIT _A_

IN WITNESS WHEREOF, grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

_Carl Musselwhite_
Signature of first witness to both

_Cecil E. Daughtrey Jr._
Cecil Daughtrey, Jr.

CARL Musselwhite
Printed name of first witness

_Jonathan Forman_
Signature of second witness to both

_Patricia A. Daughtrey_
Patricia Ann Daughtrey

Jonathan Forman
Printed name of second witness

STATE OF FLORIDA

COUNTY OF DESOTO

The foregoing instrument was acknowledged before me this _26th_ day of July, 2013, by **Cecil Daughtrey, Jr.** joined by his spouse **Patricia Ann Daughtrey**, husband and wife, who are each [X] personally known to me or who have each produced [ ] a Florida driver's license as identification, and who did/did not take an oath.

Sign _Bobbi Jo Forman_
Notary Public, State of Florida

_Bobbi Jo Forman_
Print Notary Name
My Commission Expires: _9/27/13_

_DD 907737_
Commission Number

Case 9:13-bk-14831-FMD    Doc 132    Filed 01/06/15    Page 6 of 13



EXHIBIT "A"

 **Fidelity National Title Insurance Company**

**Snyder Law Group, PA**
11031 Gatewood Dr.
Bradenton, FL 34211
Phone: 941-747-3456
Fax: 941-727-9006

Fidelity National Title Insurance Company

**COMMITMENT FOR TITLE INSURANCE**
**SCHEDULE A**

Order No.: 5047005
Customer Reference:  72 Partners

1.    Effective Date: December 01, 2014 at 7:00 AM

2.    Policy or Policies to be issued:                                     Premium:  $TBD

        A.  ALTA Owners 2006 with Florida Modifications
             Proposed Insured:  72 Partners, LLC, a Florida limited liability company
             Proposed Amount of Insurance:  TBD

3.    The estate or interest in the land described or referred to in this Commitment is:

        Fee Simple

4.    Title to the Fee Simple estate or interest in the land is at the Effective Date vested in:

        72 Partners, LLC, a Florida limited liability company; and Joseph D. Gilberti, Jr.; as their
        interests appear of record

5.    The land referred to in this Commitment is described in Exhibit "A" attached hereto and
        made part hereof.

EXHIBIT 

Copyright American Land Title Association.  All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited.  Reprinted under license from the American Land Title Association.
ALTA Commitment (6/17/06) (with FL Modifications)

 *Fidelity National Title Insurance Company*

Order Number:  5047005
Customer Reference:  72 Partners

### SCHEDULE B SECTION I
### REQUIREMENTS

The following are requirements to be complied with:

1. Payment to or for the account of the grantors or mortgagors of the full consideration for the estate or interest to be insured.

2. Instrument(s) creating the estate or interest to be insured must be properly executed, delivered and filed for record:

   A. Record a certified copy of Order Granting Chapter 7 Trustee's Amended Motion and Notice of Proposed Compromise of Controversy Between Trustee and 72 Partners, LLC entered as Docket Item No. 97 in Case No. 9:13-bk-14831-FMD, in the United States Bankruptcy Court, Florida Middle District; authorizing the sale of the land therein.

   B. Record a certified copy of an Order entered in Case No. 9:13-bk-14831-FMD, in the United States Bankruptcy Court, Florida Middle District rendering the Warranty Deed executed by Cecil Daughtrey, Jr., joined by his spouse Patricia Ann Daughtrey, to Joseph D. Gilberti, Jr., recorded in Official Records Instrument Number 2014 067954 invalid and establishing of record that said deed in null and void.

   NOTE:  At the time of the recording of said deed the property was vested in Luis E. Rivera II, as duly appointed Chapter 7 Trustee in Bankruptcy for the estate of Cecil Daughtrey, jr., and Patricia A. Daughtrey, (debtors in possession) under Case No. 9:13-bk-14831-FMD, in the United States Bankruptcy Court, Florida Middle District.

3. Intentionally Deleted.

4. Intentionally Deleted.

5. Intentionally Deleted.

6. *Satisfaction and release of that certain Claim of Lien in favor of Joseph D. Gilberti, Jr. as agent for Land Tech Design Group, Inc., recorded December 28, 2012, in Official Records Book 2012 170529; as revised December 11, 2013 in Official Records Instrument Number 2013 165026, of the Public Records of Sarasota County, Florida.*

7. Redemption of Tax Sale Certificate # 2013-148065 for unpaid taxes for the year 2012. Tax I.D. 1039002000.
   NOTE:  The tax year gross amount was $769.94.

8. Redemption of Tax Sale Certificate # 2013-148059 for unpaid taxes for the year 2012. Tax I.D. 1037001000.
   NOTE:  The tax year gross amount was $670.17.

9. Redemption of Tax Sale Certificate # 2013-148056 for unpaid taxes for the year 2012. Tax I.D. 1035001000.
   NOTE:  The tax year gross amount was $643.31.

10. Redemption of Tax Sale Certificate # 2013-148050 for unpaid taxes for the year 2012. Tax I.D. 1029001000.
    NOTE:  The tax year gross amount was $541.00.

Copyright American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
ALTA Commitment (9/17/06) (with FL Modifications)



2 of 7

**Fidelity National Title Insurance Company**

Order Number: 5047005
Customer Reference: 72 Partners

### SCHEDULE B SECTION I
### Requirements continued

11. Redemption of Tax Sale Certificate # 2013-148031 for unpaid taxes for the year 2012.  Tax I.D. 1011001000.
    NOTE:  The tax year gross amount was $3,750.98.

12. Redemption of Tax Sale Certificate # 2013-148032 for unpaid taxes for the year 2012.  Tax I.D. 1011001010.
    NOTE:  The tax year gross amount was $433.67.

13. *Redemption of Tax Sale Certificate # 2013-148028 for unpaid taxes for the year 2012.  Tax I.D.* 1009001000.
    NOTE:  The tax year gross amount was $314.63.

14. Redemption of Tax Sale Certificate # 2014-296151 for unpaid taxes for the year 2013.  Tax I.D. 1039002000.
    NOTE:  The tax year gross amount was $871.66.

15. Redemption of Tax Sale Certificate # 2014-296145 for unpaid taxes for the year 2013.  Tax I.D. 1037001000.
    NOTE:  The tax year gross amount was $726.72.

16. Redemption of Tax Sale Certificate # 2014-296142 for unpaid taxes for the year 2013.  Tax I.D. 1035001000.
    NOTE:  The tax year gross amount was $705.85.

17. Redemption of Tax Sale Certificate # 2014-296136 for unpaid taxes for the year 2013.  Tax I.D. 1029001000.
    NOTE:  The tax year gross amount was $581.78.

18. Redemption of Tax Sale Certificate # 2014-296117 for unpaid taxes for the year 2013.  Tax I.D. 1011001000.
    NOTE:  The tax year gross amount was $3,974.73.

19. Redemption of Tax Sale Certificate # 2014-296118 for unpaid taxes for the year 2013.  Tax I.D. 1011001010.
    NOTE:  The tax year gross amount was $481.27.

20. Redemption of Tax Sale Certificate # 2014-296114 for unpaid taxes for the year 2013.  Tax I.D. 1009001000.
    NOTE:  The tax year gross amount was $336.08

21. Proof of payment, satisfactory to the Company, of taxes for the year(s) 2014 in the gross amount of $761.89 under Tax Folio Number: 1039002000.

22. Proof of payment, satisfactory to the Company, of taxes for the year(s) 2014 in the gross amount of $624.69 under Tax Folio Number: 1037001000.

23. Proof of payment, satisfactory to the Company, of taxes for the year(s) 2014 in the gross amount of $607.54 under Tax Folio Number: 1035001000.

Copyright American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.
ALTA Commitment (6/17/06) (with FL Modifications)



3 of 7

 **Fidelity National Title Insurance Company**

Order Number: 5047005
Customer Reference: 72 Partners

### SCHEDULE B SECTION I
### Requirements continued

24. Proof of payment, satisfactory to the Company, of taxes for the year(s) 2014 in the gross amount of $487.50 under Tax Folio Number: 1029001000.

25. Proof of payment, satisfactory to the Company, of taxes for the year(s) 2014 in the gross amount of $3,048.87 under Tax Folio Number: 1011001000.

26. Proof of payment, satisfactory to the Company, of taxes for the year(s) 2014 in the gross amount of $410.20 under Tax Folio Number: 1011001010.

27. Proof of payment, satisfactory to the Company, of taxes for the year(s) 2014 in the gross amount of $650.71 under Tax Folio Number: 1009001000.

### END OF SCHEDULE B   SECTION I

Copyright American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
ALTA Commitment (6/17/06) (with FL Modifications)

 **Fidelity National Title Insurance Company**

Order No.: 5047005
Customer Reference: 72 Partners

### SCHEDULE B SECTION II
### EXCEPTIONS

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

1. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2. Taxes and assessments for the year 2015 and subsequent years, which are not yet due and payable.

3. Standard Exceptions:

   A. Easements, claims of easements, boundary line disputes, overlaps, encroachments or other matters not shown by the public records which would be disclosed by an accurate survey of the Land.

   B. Rights or claims of parties in possession not shown by the public records.

   C. Any lien, or right to a lien, for services, labor, or materials heretofore or hereafter furnished, imposed by law and not shown by the public records.

   D. Taxes or assessments which are not shown as existing liens in the public records.

4. Any lien provided by County Ordinance or by Chapter 159, Florida Statutes, in favor of any city, town, village or port authority for unpaid service charges for service by any water, sewer or gas system supplying the insured land.

5. Any claim that any portion of the insured land is sovereign lands of the State of Florida, including submerged, filled or artificially exposed lands accreted to such land.

6. As to any portion of the premises herein described which is (a) submerged land or is (b) artificially filled in land, artificially exposed land, or any land accreted thereto, in what was formerly navigable waters, this Commitment or Policy is subject to the right of the United States government arising by reason of its control over navigable waters in the interest of navigation and commerce.

7. Rights of predecessors in title, and all persons claiming by, through or under same, by virtue of the reservation, grant, or lease of the oil, gas and/or minerals lying within the lands described in Schedule A, as evidenced by documents recorded in Deed Book 311, Page 95; Official Records Book 1682, Page 2142; Official Records Book 1714, Page 269; Official Records Book 1717, Page 497; Official Records Book 1744, Page 1949; Official Records Book 1803, Page 1814; Official Records Book1803, Page 1816; Official Records Book 1954, Page 935; Official Records Book 2184, Page 1085; Official Records Book 2307, Page 2447; Official Records Instrument Number 2000 132123; and Official Records Instrument Number 2008 161384, all of the Public Records of Sarasota County, Florida.
   Note: No determination has been made as to the current owner of oil, gas and/or minerals excepted herein.

8. Easement(s) granted to Sidell, Inc., a Florida corporation by Warranty Deed recorded in Official Records Book 235, Page 408; as affected by Assignment and Dedication of Access Easement recorded in Official Records Book 2335, Page 411, all of the Public Records of Sarasota County, Florida.

Copyright American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
ALTA Commitment (6/17/06) (with FL Modifications) 

5 of 7

 **Fidelity National Title Insurance Company**

Order No.: 5047005
Customer Reference: 72 Partners

**SCHEDULE B SECTION II**
**EXCEPTIONS**

9. Terms, covenants, conditions, restrictions, easements and other matters contained in the Lease dated June 22, 1992, and made by Cecil Daughtry, Jr., and Jerry Flint, a Memorandum/Short Form of which was recorded August 11, 1992, in Official Records Book 2421, Page 1626; as affected by documents recorded in Official Records Instrument Number 2006 109708; Official Records Instrument Number 2008 081598; Official Records Instrument Number 2009 058585; Official Records Instrument Number 2009 058586; Official Records Instrument Number 2009 058587; and Official Records Instrument Number 2010 072085, all of the Public Records of Sarasota County, Florida.

10. Easements as evidenced in Guardian's Deed recorded in Official Records Instrument Number 2005 166017, of the Public Records of Sarasota County, Florida.

11. Mortgage from Cecil Daughtrey Jr. and Patricia A. Daughtrey, husband and wife to BSLF Holdings, LLC, a Florida limited liability company, recorded June 14, 2010, in Official Records Instrument Number 2010 072083; together with Assignment of Leases, Rents and Profits recorded in Official Records Instrument Number 2010 072084; as affected by Notice of Lis Pendens recorded in Official Records Instrument Number 2011 061024; as assigned to 72 Partners, LLC, a Florida limited liability company by Assignment of Note, Mortgage and Other Loan Documents recorded in Official Records Instrument Number 2011 085414; and Uniform Final Judgment of Mortgage Foreclosure recorded in Official Records Instrument Number 2013 140463, all of the Public Records of Sarasota County, Florida.

NOTE: All recording references in this commitment/policy shall refer to the public records of Sarasota County, Florida, unless otherwise noted.

**END OF SCHEDULE B SECTION II**

Copyright American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
ALTA Commitment (6/17/06) (with FL Modifications)



6 of 7

 **Fidelity National Title Insurance Company**

Order No.: 5047005
Customer Reference: 72 Partners

### EXHIBIT "A"

All that part of Section 1, Township 38 South, Range 22 East, lying North of State Road 72;
All Section 2, Township 38 South, Range 22 East, LESS right of way for State Road 72;
All Section 11, Township 38 South, Range 22 East;
The North 1/2; and the West 1/4 of the South 1/2 of Section 14, Township 38 South, Range 22 East;
All of Section 15, Township 38 South, Range 22 East, LESS railroad right of way;
The West 1/2 of Section 16, Township 38 South, Range 22 East, all lying and being in Sarasota County, Florida;

LESS a parcel of land in Sections 2, 11 , 14 and 15, lying within the following described parcel: BEGIN at the Northwest corner of said Section 11; thence South 01° 59' 53" West, 5340.95 feet to the Southwest corner of said Section 11, thence North 88° 22' 46" West, 5377.94 feet to the Northwest corner of said Section 15; thence South 02° 00' 10" West, 1320 feet; thence South 88° 22' 46" East, 6698.08 feet; thence North 01° 59' 53" East, 7240.95 feet to the South Right-of-Way line of State Road 72; thence South 66° 13' 13" West, 1042.16 feet along said South Right-of-Way of State Road 72; thence along said South Right-of-Way of State Road 72, Southwesterly along a curve to the right 400.45 feet to the West line of said Section 2; thence South 02° 14' 29" West, 18.87 feet to the POINT OF BEGINNING;

LESS AND EXCEPT Commence at the intersection of the East Section line of Section 2, Township 38 South, Range 22 East, Sarasota County, Florida and the North right-of-way line of SR 72; thence Southwesterly along North right-of-way line of SR 72 a distance of 1,870 feet more or less to the POINT OF BEGINNING of the property; this point would be 1,752 feet Westerly as measured perpendicular from the East line of said Section 2, Township 38 South, and Range 22 East; thence continue Southwesterly along North right-of-way SR 72 for 498 feet; thence Northerly parallel to the East Section line of Section 2, Township 38 South, Range 22 East, a distance of 916 feet; thence Westerly and parallel to the North Section line of Section 2, Township 38 South, Range 22 East a distance of 1,527 feet; thence Northerly 2,717 feet more or less parallel to the East Section line of Section 2, Township 38 South, Range 22 East to the North Section line of Section 2, Township 38 South, Range 22 East; thence East along the North Section line of Section 2, Township 38 South, Range 22 East, a distance of 3,814 feet more or less to the Northeast corner of said Section 2, Township 38 South, Range 22 East; thence continue along the North line of Section 1, Township 38 South, Range 22 East, a distance of 90 feet; thence Southerly parallel to the West Section line of Section 1, Township 38 South, Range 22 East, a distance of 603 feet; thence Westerly parallel to the North Section line of Section 1, Township 38 South, Range 22 East, a distance of 90 feet to the West Section line of Section 1 , Township 38 South, Range 22 East; thence Westerly parallel to the North Section line of Section 2, Township 38 South, Range 22 East a distance of 1,752 feet; thence Southerly parallel to the East Section line of Section 2, Township 38 South, Range 22 East a distance of 2,826 feet more or less to the POINT OF BEGINNING.

Copyright American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
ALTA Commitment (6/17/06) (with FL Modifications)

Exhibit "B"



UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

# PRO MEMO

02/19/2015 10:00 AM

COURTROOM Room 4-117

HONORABLE CARYL DELANO

CASE NUMBER: _____          FILING DATE: _____

**9:13-bk-14831-FMD**          **7**          **11/07/2013**

**Chapter 7**

**DEBTOR:**          Cecil Daughtrey

                         Patricia Daughtrey

**DEBTOR ATTY:**   **Paul DeCailly**

**TRUSTEE:**          **Luis Rivera**

**HEARING:**

Motion to Nullify and/or Void Transfer of Real Property Filed by Ryan L. Snyder on behalf of Creditor 72 Partners, LLC;   Doc #132

**APPEARANCES::** Luis Rivera, Ryan Snyder

**WITNESSES:**

**EVIDENCE:**

**RULING:**
Motion to Nullify and/or Void Transfer of Real Property Filed by Ryan L. Snyder on behalf of Creditor 72 Partners, LLC;   Doc #132
-   *Withdrawn in Open Court by Mr. Snyder*
Proposed Orders, if applicable, should be submitted within three days after the date of the hearing - Local Rule 9072-1(c). Orders
not submitted by the time of closing will result in motions/objections/applications being denied as moot. This docket
entry/document is not an official order of the Court.

Exhibit "C"

Page:    1

**FORM 1**

**INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT**

**ASSET CASES**

| | | | | | |
|---|---|---|---|---|---|
| Case No: | 13-14831 | FMD | Judge: | Caryl E. Delano | Trustee Name: | Luis E. Rivera II |
| Case Name: | Cecil Daughtrey, Jr. | | | | Date Filed (f) or Converted (c): | 11/07/2013 (f) |
| | Patricia A. Daughtrey | | | | 341(a) Meeting Date: | 12/11/2013 |
| For Period Ending: | 03/31/2015 | | | | Claims Bar Date: | 05/15/2014 |

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Values | Est Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Formally Abandoned OA=554(a) | Sale/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| 1.  Homestead PIN 1009-00-1000 (210+/- ac) | 6,000,000.00 | 6,000,000.00 | | 0.00 | FA |
| 2.  Homestead PIN 1011-00-1000 (470+/- ac) | 13,500,000.00 | 0.00 | | 0.00 | FA |
| 3.  Homestead PIN 1011-00-1010 (160+/- ac) | 4,500,000.00 | 0.00 | | 0.00 | FA |
| 4.  Homestead PIN 1029-00-1000 (480+/- ac) | 13,600,000.00 | 0.00 | | 0.00 | FA |
| 5.  Homestead PIN 1035-00-1000 (360+/- ac) | 10,225,000.00 | 0.00 | | 0.00 | FA |
| 6.  Homestead PIN 1037-00-1000 (470+/- ac) | 13,500,000.00 | 0.00 | | 0.00 | FA |
| 7.  Homestead PIN 1039-00-2000 (315+/- ac) | 8,950,000.00 | 0.00 | | 0.00 | FA |
| 8.  Household goods and furnishings (u) | 2,500.00 | 2,500.00 | | 0.00 | 2,500.00 |
| 9.  American Flag | 100.00 | 100.00 | | 0.00 | 100.00 |
| 10.  Wearing apparel (u) | 250.00 | 250.00 | | 0.00 | 250.00 |
| 11.  AR-15, shotgun, pocket knife | 500.00 | 1,500.00 | | 0.00 | 2,000.00 |
| 12.  Gilberti Water Company & LandTech Design Engineering Group- | 5,125,000.00 | 100.00 | | 0.00 | 100.00 |
| 13.  Water and Mineral Rights | 50,000,000.00 | 100.00 | | 0.00 | 100.00 |
| 14.  Sarasota Case with RICO counterclaim | 15,000,000.00 | 0.00 | | 300,000.00 | FA |
| 15.  Dodge SUV | 5,000.00 | 5,000.00 | | 0.00 | 5,000.00 |
| 16.  Small cart | 200.00 | 200.00 | | 0.00 | 200.00 |
| 17.  Horse, dogs and cats | 500.00 | 500.00 | | 0.00 | 500.00 |
| 18.  Small farming for food | 250.00 | 250.00 | | 0.00 | 250.00 |
| 19.  Horse feed | 50.00 | 50.00 | | 0.00 | 50.00 |
| 20.  ScottTrade Accounts (u) | 0.00 | Unknown | | 0.00 | FA |
| 21.  Tractor (u) | 0.00 | Unknown | | 0.00 | FA |
| 22.  SunTrust bank account(s) (u) | 0.00 | 658.00 | | 0.00 | 658.00 |
| 23.  2011 Polaris ATV (u) | 0.00 | Unknown | | 0.00 | FA |
| 24.  2011 Iron King Trailer (u) | 0.00 | 600.00 | | 0.00 | 600.00 |

Page:   2

FORM 1

### INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT
### ASSET CASES

| Case No: | 13-14831 | FMD | Judge: | Caryl E. Delano | Trustee Name: | Luis E. Rivera II |
|---|---|---|---|---|---|---|
| Case Name: | Cecil Daughtrey, Jr. | | | | Date Filed (f) or Converted (c): | 11/07/2013 (f) |
| | Patricia A. Daughtrey | | | | 341(a) Meeting Date: | 12/11/2013 |
| For Period Ending: | 03/31/2015 | | | | Claims Bar Date: | 05/15/2014 |

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Values | Est Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Formally Abandoned OA=554(a) | Sale/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| 25.  Tractor and equipment (u) | 0.00 | 17,000.00 | | 0.00 | 17,000.00 |
| INT.  Post-Petition Interest Deposits (u) | Unknown | N/A | | 0.00 | Unknown |

Gross Value of Remaining Assets

| TOTALS (Excluding Unknown Values) | $140,409,350.00 | $6,028,808.00 | | $300,000.00 | $29,308.00 |
|---|---|---|---|---|---|

(Total Dollar Amount in Column 6)

Major activities affecting case closing which are not reflected above, and matters pending, date of hearing or sale, and other action:

Appeal remains pending before District Court.  Appellant's brief filed April 13, 2015.  Appellee's response brief due April 27, 2015 (LR)

Amended Schedule F filed by Lara Roeske Fernandez on behalf of Trustee.  Dec, 5, 2014 (LR)

Notice of Appeal filed by Debtors.  Nov. 25, 2014 (LR)

E-mail to debtor's counsel regarding turnover of Dellhati credit report.  Order Denying Motion for Reconsideration of Order Granting Motion and Notice of Compromise of Controversy Between Trustee and 72 Partners, LLC, Order Denying Motion for Reconsideration of Order Denying Debtor's Motion to Convert to a Case Under Chapter 11 and Order Granting In Part Motion for Relief From Stay entered Nov. 18, 2014 (LR)

Nov. 18, 2014 (LR)

Order on Motion for Rehearing or Reconsideration and Scheduling Hearing entered 10/28/14; filed Proof of Service. November 3, 2014 (RH)

Motion for Reconsideration of Order Granting Motion and Notice of Compromise of Controversy Between Trustee and 72 Partners, LLC filed by Joseph Gilberti, Land Tech Design Group, Inc.  Oct. 22, 2014 (LR)

Rev'd Motion for Reconsideration of Order Denying Debtor's Motion to Convert filed 10/17/14.  Oct. 22, 2014 (LR)

Order Granting Motion and Notice of Compromise of Controversy Between Trustee and 72 Partners, LLC entered 10/7/14.  Executed transfer documents.  Oct. 8, 2014 (LR)

Order Continuing and Rescheduling Hearing on Motion to Quash entered 10/03/14; filed Proof of Service.  October 7, 2014 (RH)

Submitted proposed order continuing hearing on motion to quash and directing debtor to file amended schedules (T890291415463S).  Hearing held 9/25/14.  Motion and Notice of Compromise of Controversy with 72 Partners LLC granted.  Motions to Convert denied.  Sept. 30, 2014 (LR)

Motion to Withdraw as Counsel for debtor(s) Filed by Eric A Lanigan.  Motion to Convert Case to Chapter 11 filed by Paul DeCailly on behalf of Debtor.  Sept. 22, 2014 (LR)

Order Granting Ore Tenus Motion to Direct the Chapter 7 Trustee to file Schedules D, E and F.  Sept. 11, 2014 (LR)

Objection to Motion and Notice of Compromise of Controversy filed by Joseph Gilberti.  Hearing Scheduled for 07/24/2014 10:00 am Ft. Myers, FL.  June 12, 2014 (LR)

Motion and Notice of Compromise of Controversy with 72 Partners LLC Filed by Lara Roeske Fernandez on behalf of Trustee.  May 29, 2014 (LR)

Filed Proof of Service re Order Sustaining Objection to Claim of Exemptions. May 20, 2014. (RH)

Order Sustaining Objection to Debtor's Claim of Exemptions entered 5/16/14.  May 20, 2014 (LR)

Submitted proposed Order Sustaining Trustee's Objection to Exemptions (tracking no. T515201416917).  - Jodi Payne 5/15/2014

Order Granting Motion to Extend Time to Object to Discharge (Second Motion) (Extended to June 11, 2014) entered 4/4/14.  Filed Proof of Service.  April 15, 2014 (LR)

Filed Objection to Exemptions.  April 1, 2014 (LR)

Hearing Held 3/27/14 on Motion to Withdraw as Counsel Filed by David Lampley - Granted.  March 28, 2014 (LR)

Filed Motion for Rule 2004 Examination of Debtors and submitted proposed order (T325201412304l).  March 25, 2014 (LR)

Hearing Held 3/4/14 on Expedited Motion for Reconsideration of Order Granting Motion for Relief from Stay.  Granted.  FEH on valuation on 4/16/2014 at 9:30 am.  Mar. 5, 2014 (LR)

Order Granting Motion to Extend Time to Object entered 01/16/14; filed Proof of Service, January 23, 2014 (RH)

Filed Motion to Extend Time to Object to Discharge and submitted proposed order (T110201418253?).  Jan. 10, 2014 (LR)


Initial Projected Date of Final Report (TFR): 12/31/2015          Current Projected Date of Final Report (TFR): 12/31/2015

Trustee Signature:          /s/ Luis E. Rivera II          Date: 04/30/2015

Case 9:13-bk-14831-FMD    Doc 161    Filed 04/30/15    Page 4 of 6

Luis E. Rivera II
1715 Monroe Street
Fort Myers, FL 33901
(239) 344-1104
Trustee.Rivera@henlaw.com

Page:    1

FORM 2

**ESTATE CASH RECEIPTS AND DISBURSEMENTS RECORD**

Case No: 13-14831

Case Name: Cecil Daughtrey, Jr.

Patricia A. Daughtrey

Taxpayer ID No: XX-XXX8221

For Period Ending: 03/31/2015

Trustee Name: Luis E. Rivera II

Bank Name: Union Bank

Account Number/CD#: XXXXXX6479

Checking

Blanket Bond (per case limit): $48,409,000.00

Separate Bond (if applicable):

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| Transaction Date | Check or Reference | Paid To / Received From | Description of Transaction | Uniform Tran. Code | Deposits ($) | Disbursements ($) | Account/CD Balance ($) |
| 01/29/15 | 14 | Trenam Kemker | Surrender of Asset 14 per Order (Doc No. 97) | 1129-000 | $300,000.00 | | $300,000.00 |
| 02/25/15 | | Union Bank | Bank Service Fee under 11 U.S.C. § 330(a)(1)(B), 503(b)(1), and 507(a)(2) | 2600-000 | | $28.77 | $299,971.23 |
| 03/25/15 | | Union Bank | Bank Service Fee under 11 U.S.C. § 330(a)(1)(B), 503(b)(1), and 507(a)(2) | 2600-000 | | $402.73 | $299,568.50 |

|  |  |  |
|---|---|---|
| COLUMN TOTALS | $300,000.00 | $431.50 |
| Less: Bank Transfers/CD's | $0.00 | $0.00 |
| Subtotal | $300,000.00 | $431.50 |
| Less: Payments to Debtors | $0.00 | $0.00 |
| Net | $300,000.00 | $431.50 |

Page Subtotals:                    $300,000.00        $431.50

TOTAL OF ALL ACCOUNTS

|  | NET DEPOSITS | NET DISBURSEMENTS | ACCOUNT BALANCE |
|---|---|---|---|
| XXXXXX6479 - Checking | $300,000.00 | $431.50 | $299,568.50 |
|  | $300,000.00 | $431.50 | $299,568.50 |
|  | (Excludes account transfers) | (Excludes payments to debtors) | Total Funds on Hand |

| | |
|---|---|
| Total Allocation Receipts: | $0.00 |
| Total Net Deposits: | $300,000.00 |
| Total Gross Receipts: | $300,000.00 |

Trustee Signature:    /s/ Luis E. Rivera II    Date: 04/30/2015

Luis E. Rivera II
1715 Monroe Street
Fort Myers, FL  33901
(239) 344-1104
Trustee.Rivera@henlaw.com

Page Subtotals:                          $0.00          $0.00

171604 REV. 5/17 LPS

U.S. DISTRICT COURT FORT MYERS
239-461-2000
U.S. DISTRICT COURT
2110 FIRST STREET
FORT MYERS FL 33901

4 LBS                                    1 OF 1

SHIP TO:
TINA MASON/JILL NORRIS
(813) 301-5131
UNITED STATES BANKRUPTCY COURT
ROOM 555
801 N. FLORIDA AVENUE
TAMPA  FL 33602-3860



FL 336 9-03



UPS GROUND

TRACKING #: 1Z 379 020 03 9430 1096